Commonwealth *v.* Trowbridge.

COMMONWEALTH *vs.* JONATHAN V. TROWBRIDGE.

Middlesex. February 6, 1995. - March 21, 1995.

Present: WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Supreme Judicial Court,* Further appellate review. *Indecent Assault and Battery. Child Abuse. Evidence,* Exculpatory, Grand jury proceedings, Competency, Sexual conduct, Expert opinion, Credibility of witness, Anatomically correct doll, Hearsay, Fresh complaint. *Practice, Criminal,* Indictment, Grand jury proceedings, Judicial discretion, Instructions to jury. *Grand Jury. Witness,* Child, Competency, Expert, Credibility.

At the trial of an indictment for sexual abuse of a child, there was no error in the judge's denial of the defendant's motion to dismiss the indictments based on the prosecutor's withholding from the grand jury evidence that other courts had dismissed as unfounded previous allegations of sexual misconduct of the defendant with the child, his daughter, where the trial jury, having heard all the evidence, had found the defendant guilty beyond a reasonable doubt. [753-754]

At the trial of an indictment for sexual abuse of a minor, there was no substantial risk of a miscarriage of justice in the judge's determination that the child witness was competent to testify. [754-755]

At the trial of an indictment for sexual abuse of a child, the judge incorrectly refused to allow an expert defense witness to testify as to his personal observations of the child while in the presence of the defendant, her father, and the judge correctly excluded proffered testimony of the expert that would have impermissibly intruded on the function of the jury to assess the credibility of the child. [755-757]

At the trial of an indictment for indecent assault and battery on a child under the age of fourteen, there was no error in the judge's allowing the child witness to use an anatomically correct doll during her testimony and the judge did not abuse his discretion in permitting the doll in the jury room during deliberation. [757]

At a criminal trial, there was no error in the judge's instructions on indecent assault and battery. [757-758]

At a criminal trial, an out-of-court conversation of the child victim with her teacher was hearsay and should not have been admitted. [758]

At the trial of an indictment for indecent assault and battery on a child under age fourteen, testimony of the Commonwealth's expert witness, a

pediatric gynecologist, impermissibly intruded on the jury's function of assessing the credibility of the child witness, and a certain inflammatory hearsay statement testified to by the expert should have been excluded. [758-760]

At the trial of an indictment for sexual abuse of a child, the judge's instructions on fresh complaint were inadequate where the judge did not explain that the jury could not use fresh complaint evidence substantively; the error created a substantial risk of a miscarriage of justice and a new trial was required. [760-762]

INDICTMENT found and returned in the Superior Court Department on August 8, 1989.

The case was tried before *Walter E. Steele*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Barbara F. Berenson*, Assistant District Attorney (*Marcia E. Jackson*, Assistant Attorney General, with her) for the Commonwealth.

*Esther J. Horwich* (*Steven J. Brooks* with her) for the defendant.

NOLAN, J. On October 25, 1990, a jury convicted the defendant, Jonathan V. Trowbridge, of indecent assault and battery on a child under the age of fourteen, but acquitted him on the charge of rape of a child under the age of sixteen. The defendant filed a timely notice of appeal. After hearing oral arguments, the Appeals Court, on its own initiative, requested that the parties brief the issue of the sufficiency of the judge's instructions on fresh complaint. The Appeals Court reversed the defendant's conviction, and held that the judge's failure to instruct properly the jury regarding the limited purpose of fresh complaint testimony created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Trowbridge*, 36 Mass. App. Ct. 734, 746 (1994). This court granted the Commonwealth's application for further appellate review. We agree with the Appeals Court and reverse the defendant's conviction.

We note at the outset that, although the defendant did not file an application for further appellate review, we may con-

sider all issues briefed and argued before the Appeals Court. *Commonwealth* v. *Lombard, ante* 585 (1995). Our order granting further appellate review did not limit the issues to be addressed. To the extent that language in *Commonwealth* v. *Caldwell,* 418 Mass. 777, 778 n.2 (1994), suggests otherwise, we reaffirm our previous position that in a case of this type, "[u]nless we direct otherwise in our order granting an application for further appellate review, all issues that were before the Appeals Court are before this court, including issues not addressed in the application." *Commonwealth* v. *Burno,* 396 Mass. 622, 623 (1986). See also *Commonwealth* v. *Lombard, supra.*

We briefly summarize the facts of this case.[1] In August, 1989, a Middlesex County grand jury returned two indictments against the defendant, alleging that the defendant had committed both rape and indecent assault and battery on his daughter. The abuse allegedly occurred during a fifteen-month period from November, 1987, to February, 1989. The child was five and six years old during the time of the alleged abuse.

The defendant and the child's mother were married for several years before becoming embroiled in a bitter divorce, and custody battle. The child's mother was awarded custody, and during the relevant time period, the child lived in Connecticut with her mother and visited her father in Massachusetts.

In March, 1989, the child's first grade teacher conducted a series of classes on personal safety, including a discussion on sexual abuse. Following the class, the child approached the teacher and said "I go to my therapist to talk to him about when my daddy touches me in my private body parts." After the child's disclosure, the teacher reported the alleged abuse to school officials. A school social worker interviewed the child, and the child provided further details of the alleged abuse.

---

[1]For an extensive summary of the facts, see *Commonwealth* v. *Trowbridge,* 36 Mass. App. Ct. 734, 735-740 (1994).

At trial, the Commonwealth called five witnesses. The child, who was almost eight years old at the time of trial, testified that her father would lift her up on the bed and touch her "private parts." She also testified that she felt her father's finger go inside her vagina. The Commonwealth's remaining four witnesses, which included the child's mother, the child's first-grade teacher, a school social worker, and a pediatric gynecologist, all testified as fresh complaint witnesses. In addition, the pediatric gynecologist testified as an expert witness in the area of child sexual abuse.

The defense in the case focused on the defendant's normal and loving relationship with his daughter. The defendant argued that any touching that had occurred was part of normal parental activities, such as bathing and personal hygiene. He also sought to convince the jury that the mother's animosity toward him had influenced the child to make false accusations. Finally, the defendant testified that the mother had accused him previously of sexual abuse, and that these accusations were later determined to be unfounded by a Connecticut court and a Massachusetts Probate Court.

We turn now to the merits of the case. Additional facts will be provided where necessary.

1. *The indictments.* Prior to trial, the defendant moved to dismiss the indictments on the basis that the prosecutor withheld certain exculpatory evidence. The defendant claims the prosecutor should have informed the grand jury that the defendant and his wife were engaged in an on-going custody battle, that the defendant's wife previously accused him of sexual misconduct regarding the child, and that after several court-ordered investigations into the abuse allegations, the defendant's visitation rights were fully reinstated.

"Prosecutors are not required in every instance to reveal all exculpatory evidence to a grand jury." *Commonwealth* v. *McGahee*, 393 Mass. 743, 746 (1985). However, they must disclose evidence that would "greatly undermine the credibility of evidence likely to affect the grand jury's decision to indict." *Id.* We review the proceedings to determine whether the grand jury received sufficient evidence to find probable

cause for indictment, and whether the grand jury proceedings were impaired. *Id.* at 747.

There was no error in the judge's denial of the defendant's motion to dismiss the indictments. The grand jury were informed of the defendant's divorce proceedings and the prior allegations of sexual misconduct. Although the grand jury were not informed that other courts had dismissed as unfounded previous sexual misconduct allegations, this information would not have greatly undermined the credibility of evidence against the defendant, and would not have affected significantly the grand jury's decision to indict. Even after hearing evidence of the bitter custody battle, the prior allegations of sexual misconduct, and the outcome of several court-ordered investigations into the alleged abuse, a trial jury found the defendant guilty beyond a reasonable doubt. "It would be rational to assume, therefore, that a failure to disclose the same evidence to a grand jury seeking only *probable cause* would have a negligible effect on their decision to indict" (emphasis in original). *Commonwealth* v. *LaVelle*, 414 Mass. 146, 151 n.2 (1993).

2. *Competency of the child witness.* The defendant challenged the competency of the child who was almost eight years old at the time of trial. After conducting a voir dire, the judge ruled the child competent. The defendant argues that the judge applied an incorrect legal standard in determining the competency of the child witness. Because the defendant failed to object, we limit our review to whether there was a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). We conclude that there was no error.

In determining the competency of a witness, the courts of the Commonwealth apply a two-prong test: "(1) whether the witness has the general ability or capacity to 'observe, remember, and give expression to that which she ha[s] seen, heard, or experienced'; and (2) whether [the witness] has 'understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general

way, belief that failure to perform the obligation will result in punishment.'" *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 329 (1986), quoting *Commonwealth* v. *Tatisos*, 238 Mass. 322, 325 (1921). A judge's determination of competency is discretionary and will seldom be faulted on appellate review. *Commonwealth* v. *Brusgulis, supra* at 329-330. Where the judge applies an incorrect legal standard, however, the discretionary ruling will be reversed. *Id.*

The defendant contends that the trial judge's questions focused exclusively on the child's ability to tell the truth, and that the judge failed to inquire whether the child had the ability to observe, remember, and recall facts.[2] During the voir dire, the judge asked the child her name, her religion, her grade in school, and the subjects she studied. The child's ability to respond accurately and coherently to these questions demonstrated that the child possessed the general ability to observe, remember and recount. See *Malchanoff* v. *Truehart*, 354 Mass. 118, 120 (1968). See also *Kentucky* v. *Stincer*, 482 U.S. 730, 741 (1987). Further, despite some inconsistencies and memory lapses in the child's trial testimony, the child was able to recall specific events of the alleged sexual abuse. See *Malchanoff, supra* at 121. We further note that the judge's decision not to employ a qualified physician or psychologist to aid in the competency determination was not error. This was a matter entirely within the judge's discretion. See G. L. c. 123, § 19 (1992 ed.).

3. *Exclusion of the defendant's expert witness.* The defendant sought to introduce the expert testimony of psychologist, Dr. Robert S. Colen. At a voir dire, the doctor testified to the following: Dr. Colen was appointed by a Connecticut court in order to determine if the defendant's visitation rights should be reinstated, and to investigate allegations of sexual abuse. After examining the defendant, the mother, and the child, the doctor issued a report stating that he could find no

---

[2]The defendant does *not* challenge the trial judge's determination that the child understood sufficiently the difference between truth and falsehood.

evidence of sexual abuse, and recommended that the defendant's visitation rights be reinstated.[3] The doctor explained that the basis for his conclusion was that the defendant did not exhibit personality traits of a sexual abuser. The doctor also testified that the child's mother was an angry and bitter woman, and that her animosity toward the defendant was influencing the child to become her ally. As to the child's relationship with her father, the doctor testified that the child appeared relaxed and affectionate while in her father's presence, and that she exhibited no signs of anxiety or discomfort.

The judge refused to admit the expert's testimony ruling that, despite his impressive qualifications, the expert's testimony amounted to nothing more than an opinion on the credibility of the child.

The defendant claims that the judge abused his discretion in refusing to allow Dr. Colen to testify as to his personal observations of the child while in the presence of her father. We agree. Dr. Colen should have been permitted to testify as to his personal observations, just as lay witnesses did at trial.

As to the exclusion of the expert's testimony that the mother's animosity could have influenced the child to make false accusations of sexual abuse, there was no error. Such an opinion would have impermissibly intruded on the function of the jury to assess the credibility of the child witness. See *Commonwealth* v. *Ianello*, 401 Mass. 197, 200-202 (1987) (judge properly excluded expert testimony that a child may falsely accuse parent of sexual assault because of stress involved custody dispute).

Finally, we decline to address the defendant's argument that Dr. Colen's testimony should have been allowed in order to establish that the defendant's personality did not match that of a sexual abuser. Our review of the voir dire reveals that the defendant sought to introduce the expert testimony for three reasons: (1) to establish witness bias; (2) to estab-

---

[3]This report concerned allegations of sexual abuse which allegedly occurred prior to the incidents alleged in this case.

lish that the mother's animosity influenced the child to make false accusations; and (3) to introduce the expert's personal observations of the child's behavior while in her father's presence. At no point in the proceedings did the defendant purport to offer the expert testimony in order to establish that the defendant's personality did not fit the profile of a sexual abuser.

4. *Anatomically correct doll.* At trial the child testified that her father would lift up her clothes and touch her "private parts." Using an anatomically correct doll, the child described her "private parts" as the doll's vagina, breasts, and buttocks. The child also used the doll to demonstrate how the defendant would touch her.

It was within the judge's discretion to allow the child to use the anatomically correct doll during her testimony. See *Everson* v. *Casualty Co. of Am.*, 208 Mass. 214, 219-221 (1911). See also P.J. Liacos, Massachusetts Evidence § 11.13.2 (6th ed. 1994). The use of the doll could have assisted the child in giving an anatomically correct description of the alleged abuse, as well as assisting the jury in comprehending the precise nature of the child's testimony. There was also no abuse of discretion in permitting the doll in the jury room during deliberations. See *Commonwealth* v. *Greenberg*, 339 Mass. 557, 581-582 (1959).

5. *Indecent assault and battery instruction.* The defendant next claims that the judge erred in instructing the jury that an assault and battery was indecent if it involved the touching of the genitals, buttocks or breasts, without also informing the jury that such a touching was not indecent if it was part of normal parental activities.[4] There was no error. In

---

[4]The judge instructed the jury: "The Commonwealth must prove beyond a reasonable doubt that the assault and battery was indecent, as the word is commonly understood, measured by common understanding and practices. An indecent act is one that is fundamentally offensive to contemporary standards of decency and moral values. It is behavior which the common sense of society would regard as immodest, immoral, and improper. An assault and battery is indecent if it involves touching portions of the anatomy commonly thought private, such as a person's genital area or buttocks or the breasts of a female."

addition to the challenged language, the judge also instructed the jury that only those acts which are "fundamentally offensive to contemporary standards of decency and moral values" are to be considered indecent. Further, the judge instructed that an indecent act is to be "measured by common understanding and practices," and that "[i]t is behavior which the common sense of society would regard as immodest, immoral, and improper." Reading the charge as a whole, it is clear that the jury were instructed properly, and that there was no risk that the jury would consider normal parental activities indecent.

6. *Hearsay statement of the teacher.* The child's first-grade teacher testified that the child cried on Friday afternoons prior to scheduled visits with her father. Over defense counsel's objection, the teacher also testified that when the child was asked why she was crying, "She would just say I don't want to go visit my daddy. I don't like my daddy."

The child's out-of-court conversation with her teacher was hearsay and should not have been admitted. We reject the Commonwealth's contention that the statement was properly admitted under the spontaneous utterance exception to the hearsay rule. Under this exception, "an utterance is spontaneous if it is made under the influence of an exciting event and before the declarant has had time to contrive or fabricate the remark." *Commonwealth* v. *Zagranski*, 408 Mass. 278, 285 (1990). Although there was evidence that the child was crying, there was no evidence that the child was under the influence of any startling or exciting event. See *id.* (statement made by his wife shortly after discovery of husband handcuffed and under arrest in kitchen of her home); *Commonwealth* v. *Fuller*, 399 Mass. 678, 682 (1987) (statement made shortly after incident of rape). The statements in this case were not made in circumstances which reasonably negated premeditation. Further, there was no evidence that the statements were made sufficiently proximate to an event so as to be admissible as spontaneous utterances.

7. *Dr. Gillotti's expert testimony.* One of the five witnesses called by the Commonwealth was Dr. Patrice S. Gillotti, a

pediatric gynecologist. Dr. Gillotti testified not only as a fresh complaint witness, but also as an expert witness on sexually abused children.

Dr. Gillotti's testimony began by outlining the behavioral characteristics of sexually abused children. She then described the child's behavior during a gynecological visit. The doctor testified that the child clung to her mother and avoided eye contact. When asked whether this behavior was consistent with that of a sexually abused child, the doctor agreed that it was "a common reaction to a child who has been sexually abused."

The doctor also testified that in many child abuse cases, the abuse is carried out in a nonviolent manner such that no signs of physical trauma may result. After testifying that her gynecological examination of the child revealed no signs of acute trauma, the doctor was allowed to give her opinion that her findings were consistent with a hypothetical question posed by the prosecutor "[b]ecause in the large majority of cases of child sexual abuse, there are no physical findings of trauma."[5]

Although expert testimony on the general behavioral characteristics of sexually abused children is permissible, an expert may not refer or compare the child to those general characteristics. *Commonwealth v. Mamay*, 407 Mass. 412, 421 (1990). Such testimony impermissibly intrudes on the jury's province to assess the credibility of the witness. *Commonwealth v. Colin C.*, ante 54, 60 (1994).

In the present case, the doctor not only testified that the child's behavior was consistent with that of sexually abused

---

[5]The prosecutor posed the following hypothetical question to the expert: "Now, with respect to your findings concerning [the child's] examination, assuming the following facts: That there was touching, or fondling, in the vaginal area, and a one time digital penetration. Assuming further that this occurred at most every other weekend for a period of one and a half years, and assuming further that there were no objects used and it was done in a careful fashion, or a loving fashion — strike that — in a careful fashion, and assuming further that the last possible contact would have been February 26, 1989. Do you have an opinion to a reasonable degree of medical certainty whether your findings are consistent with those facts?"

children, she also testified that the symptoms and physical condition of the child were consistent with the type of non-violent sexual abuse that the child alleged in this case. Although the doctor's opinion fell short of rendering an opinion on the credibility of the child witness, this testimony came impermissibly close to an endorsement of the child's credibility. "Such testimony could substantially influence the jury's decision about whom to believe." *Commonwealth* v. *Colin C.*, *supra* at 61.

The judge also erred in allowing the doctor to testify to a multiple hearsay statement. Dr. Gillotti testified that after conducting a gynecological exam on the child, she left the room but was called back by the child's grandmother. Over objection, the doctor testified that the grandmother reported that the child had said "that's what it felt like when her father touched her." Despite the judge's limiting instruction that the statement was not being offered for its truth, "but maybe what leads the child to talk to the doctor," the statement was unnecessary, highly inflammatory, and should have been excluded. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 351 (1994).

8. *Fresh complaint instructions.* The Appeals Court held that the judge's instructions on fresh complaint were inadequate and presented a substantial risk of a miscarriage of justice because the judge never explained that the jury could not use the fresh complaint evidence substantively. See *Commonwealth* v. *Trowbridge*, 36 Mass. App. Ct. 734 (1994). We conclude that the judge's charge was error, and that the error created a substantial risk of a miscarriage of justice.

Four witnesses testified as fresh complaint witnesses. The child's first-grade teacher first testified that after she had conducted a special class on sexual abuse, the child approached her and said, "I go to my therapist to talk to him about when my daddy touches me in my private body parts." The school's social worker next testified that during an interview with the child, the child stated that "my dad, he would touch my private bottom parts." The social worker then provided a detailed account of the alleged abuse as reported to

her by the child. The child's mother then testified that, after a discussion with the Framingham police regarding the sexual abuse charges, she understood the abuse to be that her daughter "had been fingered by her father."[6]

Dr. Gillotti, the final fresh complaint witness, testified that when she asked the child why she was at her office, the child did not respond. The doctor then asked the child if she wanted her mother to tell. The child nodded, and the mother "stated that [the child] had disclosed that her father had fingered her vagina." When asked whether this was the reason, the child affirmatively nodded.

Although there is no per se rule of how many fresh complaint witnesses may testify, the repetition of fresh complaint testimony creates a risk that the jury will use the details of the fresh complaints as substantive evidence that the crime actually occurred. *Commonwealth* v. *Lavalley*, 410 Mass. 641, 646 (1991). In order to counter this risk, we recommended in *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992), that a trial judge instruct the jury as fresh complaint testimony is admitted, and again during the judge's charge, that fresh complaint testimony may not be used as substantive evidence of the crime.

Although *Licata* was not decided at the time of the trial, the risk of a miscarriage of justice still exists. The judge allowed four fresh complaint witnesses to testify. At no time during the admission of this evidence was the jury instructed not to use the testimony as substantive evidence of the crime. The only fresh complaint instruction given was during the final charge. Furthermore, this instruction failed to describe adequately the proper use of fresh complaint testimony. Although the judge repeatedly told the jury that fresh complaint testimony only could be used to corroborate the victim's testimony, the judge failed to define the term "corroborate." "An instruction that [fresh complaint] evi-

---

[6] We agree with the Appeals Court that the mother effectively testified as to what the child had told the police. As such we consider the mother to be a fresh complaint witness. See *Commonwealth* v. *Trowbridge, supra* at 743 n.8.

dence may be used only to corroborate the complaining witness's testimony, without a definition of the term corroboration, does not alleviate the risk that the jury would use such evidence substantively." *Commonwealth* v. *Scanlon*, 412 Mass. 664, 674 (1992).

Although at trial the defendant objected to the admission of fresh complaint testimony, the defendant failed to raise the issue on appeal. Therefore, the proper standard of review is whether the judge's failure to instruct adequately the jury on the proper use of fresh complaint testimony created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman, supra.* We conclude that there was a substantial risk of a miscarriage of justice.

The evidence against the defendant was far from overwhelming. Although the child testified regarding the alleged abuse, there was no physical evidence to corroborate her story. Further, there was evidence that raised questions as to the veracity of the child's accusations. What the Commonwealth did rely on to support the child's story, however, was a significant amount of fresh complaint testimony. Without proper instructions, there was a substantial risk that the fresh complaint testimony would be used as substantive evidence of the crime, and lend undue credibility to the complaining witness. Finally, other errors, including the improper expert testimony that the child's behavior mirrored that of other sexually abused children, as well as the improper admission of the grandmother's hearsay statement, further contributed to the risk that a miscarriage of justice has resulted.[7] Accordingly, the judgment is reversed, the verdict set aside, and the case is remanded for a new trial.

*So ordered.*

---

[7]Because we are ordering reversal and a new trial, we need not address the issue of prosecutorial misconduct.