## COMMONWEALTH *vs.* HENRY E. HOUGHTON.

No. 84-P-292.

Hampden. February 8, 1995. - August 17, 1995.

Present: DREBEN, GILLERMAN, & LAURENCE, JJ.

*Practice, Criminal*, Assistance of counsel, Instructions to jury, Comment by prosecutor, Argument by prosecutor. *Evidence*, Fresh complaint.

On appeal from convictions of sexual offenses the defendant did not demonstrate that his trial counsel rendered ineffective assistance with respect to fresh complaint evidence; nor was a substantial risk of a miscarriage of justice created by the judge's failure to give limiting instructions on fresh complaint evidence on his own motion. [97-99]

At a criminal trial, the failure of defense counsel to object to certain of the prosecutor's remarks in closing argument did not amount to ineffective assistance of counsel where the remarks were based on the evidence and were a proper challenge to the defendant's credibility. [99-100]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the prosecutor's comment in closing argument on the victim's courtroom demeanor; other remarks of the prosecution were a fair description of the evidence; and any other alleged impropriety in the closing argument was not shown to be prejudicial, in light of the strong evidence against the defendant. [100-102]

INDICTMENTS found and returned in the Superior Court Department on August 11, 1982.

The cases were tried before *George C. Keady, Jr.*, J.

*James A. Couture* for the defendant.

*Jane Davidson Montori*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. With a knife to her throat, the twelve year old victim was forced to perform oral sex and to submit to other sexual acts with the defendant. He had threatened, "If you don't do anything I tell you to do, I'll kill you like the rest of the people." So the victim testified.

The defendant was convicted of rape of a child (five indictments), assault and battery by means of a dangerous weapon

(two indictments), assault with intent to commit rape (four indictments), and kidnapping. In his appeal,[1] the defendant claims ineffective assistance of counsel based on counsel's failure to request instructions with respect to fresh complaint evidence and based on his failure to object to the prosecutor's allegedly improper reference in closing argument to the defendant's abuse of alcohol. The defendant also argues that the prosecutor's closing argument impermissibly sought the jury's sympathy. We affirm the convictions.

We set forth the evidence as presented to the jury insofar as is necessary to discuss the defendant's claims, particularly in order to determine whether "defense counsel's omission[s] 'likely deprived the defendant of an otherwise available, substantial ground of defence' (*Commonwealth* v. *Saferian*, 366 Mass. 89, 96 [1974]) or whether 'better work might have accomplished something material for the defense' (*Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 [1977])." *Commonwealth* v. *Curtis*, 417 Mass. 619, 625 n.4 (1994).

The victim and her friend, Michelle, accepted the defendant's invitation to go swimming at a location known as "the Gorge." The defendant was Michelle's mother's boyfriend, and Michelle was the daughter of the victim's mother's boyfriend. After swimming at the Gorge, the defendant and the two girls drove to Michelle's home where they discovered that someone had broken into her house. Although Michelle wanted to go home with the victim, the defendant, according to the testimony of both girls, insisted upon leaving Michelle at another friend's home and threatened to throw her out of the car if she did not leave.[2] Thereafter, instead of taking the victim home, the defendant drove to a closed drive-in movie theatre, where he pulled her hair, put a knife to her throat, and threatened to kill her if she failed to accede to his wishes. He walked with her to the back of the car and

---

[1]This appeal from the defendant's convictions, dismissed in 1985 for failure to file a brief, was reinstated in 1995.

[2]He told Michelle he would come back to take her home at 9 P.M., but he did not return; nor did he return to her mother's home for several nights.

pointed to an area where he claimed to have buried persons he had killed. After forcing the victim to have oral sex, he placed a blanket or quilt on the ground and unsuccessfully attempted to have vaginal intercourse. While on the quilt, the victim threw a beer bottle at the defendant and then ran toward the movie screen. Caught by the defendant, she was forced at knifepoint to reenter the car and again to perform oral sex while the defendant drank a bottle of Budweiser beer. At one point the victim heard something fall and saw a shiny object on the ground. The police later recovered a switchblade knife, identified by the victim as the one held to her throat, near tire tracks in the area where the crimes had taken place. Other untoward acts, including forced oral sex and urination on the victim's face, occurred in the back seat of the defendant's car while the victim and defendant were lying on the quilt. The victim testified that she spit up on the quilt.

At daybreak, the defendant drove to a store to buy cigarettes. The victim escaped from the car and ran to a house in front of which an attorney, Jeffrey Weisser, was standing. He testified that she was dirty, confused, and frightened, and constantly peered over her shoulder. She kept repeating, "He'll come after me . . . . Let's get off the street first or let's get inside." Once in the house, crying and shaking, she told Weisser and his wife what had happened. Weisser's repetition of the victim's narrative was admitted as fresh complaint testimony.

The victim was taken to a hospital where she spoke to police and later led them to the area behind the movie screen. She also gave the police a written statement. At the scene, the police found four Budweiser beer bottles, the switchblade knife referred to earlier, a Marlboro cigarette box, and an AA (Alcoholics Anonymous) meeting pamphlet.

A few days after the incident, the employer (a taxi owner) of the victim's mother's boyfriend saw the defendant in his car and followed him. After the defendant tried to elude the employer, he was stopped by police and arrested. At the time, the defendant was holding a Budweiser beer bottle. A

quilt, a blue bath towel, and three bottles of Budweiser beer were found in his car. The quilt was identified by the victim as the one on which she had lain with the defendant, and chemical analysis revealed seminal fluid residue and sperm cells on two of its squares. On cross-examination, the defendant admitted that he smoked Marlboro cigarettes and that the AA pamphlet "came out of [his] car." The blue towel was shown to be part of a set owned by the victim's mother — other towels matching it were introduced in evidence — although the defendant claimed the towel belonged to Michelle's mother.

1. *Ineffective assistance of counsel with respect to fresh complaint testimony.* The fresh complaint evidence consisted of Weisser's testimony and the statement made by the victim to the police. The statement was introduced in evidence by defense counsel during his cross-examination of the victim in an attempt to show inconsistencies between her trial and out-of-court statements. Later, over objection, the police officer was permitted to read the entire statement into the record.

Defense counsel did not request limiting instructions and none were given with respect to the fresh complaint testimony during the evidentiary phase of the trial. In his final instructions, the only discussion of fresh complaint by the judge was as follows:

> "Ordinarily, what one person tells another person outside of the court is hearsay, and is not admissible, but in the case of rape, you may consider it. It is allowed, and it's allowed for the purpose of determining for corroboration relative to the rape, so you may consider the evidence of the fresh complaint as it corroborates the question of rape. That alone is not sufficient to constitute proof of rape."

Subsequent to this trial, which took place in 1982, in *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992), the Supreme Judicial Court recommended "that a trial judge instruct the jury as fresh complaint testimony is admitted, and again during the judge's charge, that fresh complaint testi-

mony may not be used as substantive evidence of the crime."
*Commonwealth* v. *Trowbridge*, 419 Mass. 750, 761 (1995).
In addition, a definition of the term corroboration must be
given to the jury. *Commonwealth* v. *Scanlon*, 412 Mass. 664,
674 (1992). *Commonwealth* v. *Trowbridge*, 419 Mass. at
761-762. This cautionary procedure is taken to avoid the risk
created by the repetition of fresh complaint testimony "that
the jury will use the details of the fresh complaints as sub-
stantive evidence that the crime actually occurred. *Common-
wealth* v. *Lavalley*, 410 Mass. 641, 646 (1991)." *Common-
wealth* v. *Trowbridge*, 419 Mass. at 761.

In this case, although the judge did not follow the recom-
mended procedures (developed subsequent to trial), we con-
clude that there was no substantial risk of a miscarriage of
justice or ineffective assistance of counsel. See *Common-
wealth* v. *Curtis*, 417 Mass. at 625 n.4, pointing out that the
standard "for testing the ineffectiveness of counsel, in a con-
stitutional sense, . . . although more detailed, seems not sig-
nificantly different from the standard of a substantial risk of
a miscarriage of justice." First, the written statement of the
victim was introduced as an exhibit by defense counsel be-
cause of an obviously tactical decision to weaken the victim's
credibility by showing inconsistencies in her versions of the
events. Once the statement was in evidence, the reading of
her statement "merely put before [the jury's ears] what they
knew already." *Bendett* v. *Bendett*, 315 Mass. 59, 65 (1943).
Second, unlike in *Trowbridge*, there were here only two fresh
complaint witnesses, Weisser and the police officer, both of
whom gave significant substantive testimony as well as fresh
complaint evidence. Most important, however, was the over-
whelming evidence of guilt. The victim's testimony was cor-
roborated by far more than fresh complaint testimony. The
physical evidence at the scene — the knife, the Budweiser
beer bottles, the AA pamphlet, the Marlboro cigarette box
— the physical evidence in the defendant's car — the semen-
spattered quilt identified by the victim, the towel, the
Budweiser beer bottles — the disarray and distraught condi-
tion of the victim observed by Weisser, the defendant's re-

fusal to take Michelle to the victim's house, thus giving him an opportunity to be alone with the victim, and the defendant's furtive behavior when followed by the taxi owner all substantially fortified the victim's account.

In these circumstances, neither the failure of the judge sua sponte to give limiting instructions nor the failure of defense counsel to request them created a substantial risk of a miscarriage of justice.

2. *Failure of counsel to object to the prosecutor's references to the defendant's abuse of alcohol.* In closing argument, the prosecutor mentioned the AA pamphlet and the fact that the defendant had been an inpatient in an alcohol rehabilitation program. We reject the defendant's argument that his trial counsel was ineffective in not objecting to these comments, which he claims characterized the defendant as a "bad person." There was evidence at trial that the defendant drank beer during the commission of the crimes and that beer bottles were found at the scene of the incidents and in the defendant's car. The defendant testified on direct examination that he did not drink, except for an occasional Miller or Budweiser, and denied that beer bottles were found in his car. He attempted to create the inference that the police had planted the evidence, and his counsel in closing laid stress on the fact that the pamphlet was not produced at trial. On cross-examination, the defendant backtracked somewhat and testified that he did not drink excessively. He denied that he had been in Alcoholics Anonymous programs for several years but admitted that the AA pamphlet was his. The prosecutor introduced rebuttal testimony, without objection, from the director of a recovery house for alcoholics that the defendant had been an inpatient in his program for three months the previous year and had been involved in other programs as well. Since the prosecutor's comments on the defendant's involvement in alcohol programs were based on the evidence and were properly used to challenge the credibility of the defendant's testimony, "[c]ounsel [was] not required to make an objection which ha[d] no reasonable likelihood of

success." *Commonwealth* v. *Achorn*, 25 Mass. App. Ct. 247, 253 (1988).

3. *Prosecutor's closing argument.* In urging that the victim's testimony was credible and that she was not acting or lying, the prosecutor argued:

> "But let's look at what supports the testimony of this little girl in this case. I think I can suggest this to you. If that little girl made that up, the best thing that anybody in this jury panel could do is quit their job and become her agent. She doesn't belong in Springfield, Massachusetts. She should be in Hollywood — trembling in front of Jeff Weisser. He doesn't know anybody in this case. He comes in here. You saw her after three hours, when she got off the witness stand six month later. She runs to her mother's arms and starts crying. Faking?"

Counsel objected, and the judge ruled: "Sustained. The jury will disregard that."

In his charge, the judge instructed the jury that they were not to decide the case based on sympathy, that opening and closing arguments were not evidence, and "anything that you were told to disregard, you are to disregard." Although the defendant did not request additional instructions at the close of trial, he now argues that the judge's charge was insufficient to counter the prosecutor's improper comment on a matter not in evidence.

There was here no substantial risk of a miscarriage of justice. First, it is doubtful that the prosecutor's comment was improper. The demeanor of a witness in a courtroom has been considered evidence even if the witness does not take the stand. In *Commonwealth* v. *Roderick*, 411 Mass. 817, 819 (1992), the defendant was charged with indecent assault and battery on a mentally retarded person[3] who could not hear or speak. The victim did not testify, but the judge per-

---

[3]He was found not guilty of that charge but was convicted of assault with intent to rape.

mitted her to sit briefly in the spectator section of the courtroom. The Supreme Judicial Court found no error. "The victim's presence and conduct in the courtroom were relevant to the issue whether the defendant would have known that the victim was mentally retarded, an element of one of the crimes of which the defendant was found not guilty." Her "hooting sound" was also relevant. *Ibid.* See also *Commonwealth* v. *Smith*, 387 Mass. 900, 907 (1983), a case in which the prosecutor commented: "And you have had an opportunity to look at him during the trial as he squirms and smirks and laughs, or whatever you have seen him do." Although the defendant did not take the stand, the court found no error in the prosecutor's comment as the "jury were entitled to observe the demeanor of the defendant during the trial." See also Liacos, Massachusetts Evidence § 11.11, at 674 (6th ed. 1994). Moreover, even if the comment was improper, it cannot be assumed that the jury ignored the judge's instruction to disregard it. See *Commonwealth* v. *Stone*, 366 Mass. 506, 513 (1974).

During closing argument, the prosecutor on three occasions mentioned the "terrible things" that were done to the victim.[4] In view of the evidence that the defendant had repeatedly raped and attempted to rape the twelve year old victim over the course of a number of hours and had urinated on her face, the prosecutor's use of the phrase "terrible things" was not "an improper appeal to prejudice, but rather a fair description of what actually happened." *Commonwealth* v. *Pontes*, 402 Mass. 311, 316 (1988).

---

[4]The defendant only objected on the third occasion when the prosecutor said:

> "[W]hen you start suggesting that two members of the West Springfield Police Department, whose only interest, I think you can infer, is that justice be done and the person that did these terrible things to [the victim] — "

Defense Counsel's objection was sustained, and the judge added, "I think that's improper." It is unclear whether the defendant was objecting to the phrase "terrible things" or to the prosecutor's alleged attempt to vouch for the credibility of the police officers. On appeal, he argues that both were improper.

The defendant also argues that the prosecutor improperly attempted to vouch for the credibility of the police officers. See note 4, *supra.* During the trial and in closing argument, the defendant made a series of implicit attacks on the credibility of the police officers and the manner in which they had conducted the investigation. Although the prosecutor should probably not have made the comment, the jury knew that the judge considered the remark improper and had sustained the objection. In view of the judge's ruling (see note 4, *supra*) and in light of the strong evidence against the defendant, any alleged error was not prejudicial.

*Judgments affirmed.*