Following a jury trial in the Juvenile Court, the juvenile was convicted of two counts of rape and one count of indecent assault and battery on a person with an intellectual disability, all as a youthful offender, and was adjudicated delinquent on one count of assault and battery on a person with an intellectual disability.[2] The juvenile appeals, claiming the judge erred by: (1) finding the victim competent; (2) excluding portions of the victim's treatment records; (3) precluding testimony as to the victim's general reputation for truthfulness; (4) excluding evidence of the victim's prior sexual knowledge; (5) failing to properly instruct the jury on serious bodily harm; and (6) failing to enter a required finding of not guilty on the youthful offender portions of the indictments. The juvenile also contends that the prosecutor presented misleading evidence that impaired the integrity of the grand jury proceedings. We affirm.
Background. The jury could have found the following facts. The victim, whom we shall call Andrew, is a cognitively impaired man with an IQ score of forty-four. As a result of his intellectual disability, Andrew is like "a young child ... stuck in a young man's body." In 2004, he became a client of the Department of Developmental Services (DDS). In July, 2011, he was placed in adult foster care. Nearly two years later, in September, 2013, Andrew disclosed to his mother that the juvenile, the grandson of Andrew's foster parents, was sexually abusing him.
When Andrew first moved to the foster home, he was twenty-four years of age and the juvenile was fifteen years of age. While his foster parents were at work, Andrew was entrusted to the care of the juvenile. The abuse started soon thereafter. Andrew, who described the conduct as "exercise," told his mother that he and the juvenile "exercised" in the basement, the juvenile's bedroom, the laundry room bathroom, and the back porch. The juvenile would take off Andrew's clothing, without his permission, and would make him perform oral sex. The juvenile also penetrated Andrew anally on multiple occasions. During one such incident, the juvenile grabbed Andrew's legs and dragged him off the bed to the floor. Andrew did not report what was happening because he was afraid that he would get in trouble.
Discussion. 1. Andrew's competency. The juvenile challenges the trial judge's determination, following a voir dire hearing, that Andrew was competent to testify. He also claims that the judge erred in denying his motion for an independent evaluation of Andrew pursuant to G. L. c. 123, § 19.
The determination of competency is a factual one and is "peculiarly within the trial judge's discretion." Commonwealth v. Jiminez, 10 Mass. App. Ct. 441, 443 (1980). In determining the competency of a witness, the judge conducts a two-prong test: "(1) whether the witness has the general ability or capacity to observe, remember, and give expression to that which [he] ha[s] seen, heard, or experienced; and (2) whether [the witness] has understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment." Commonwealth v. Trowbridge, 419 Mass. 750, 754-755 (1995) (quotation omitted). See G. L. c. 233, § 20. "A judge's determination of competency is discretionary and will seldom be faulted on appellate review," except where "the judge applies an incorrect legal standard." Trowbridge, supra at 755.
Here the judge did not abuse her discretion in finding that Andrew was competent to testify. She not only heard Andrew and observed his demeanor during the competency hearing and the trial, but also gave the juvenile wide latitude to present additional witnesses during the voir dire hearing. Based on Andrew's testimony, the judge determined that he understood the difference between the truth and a lie, and was generally able to perceive events.[3] Because the trial judge has considerable discretion and was in the best position to assess Andrew's competency, we will not disturb her finding.[4] See Commonwealth v. Tang, 66 Mass. App. Ct. 53, 63 (2006).
Similarly, the judge's denial of the juvenile's request for an independent evaluation of Andrew pursuant to G. L. c. 123, § 19, was not an abuse of discretion. See Trowbridge, supra at 755. An independent examination is necessary only where there is a "compelling need" and the examination "will produce substantial evidence bearing on the witness's testimonial capacity." See Commonwealth v. Gibbons, 378 Mass. 766, 773 (1979). The judge's decision was not "a clear error of judgment ... such that the decision fell outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotation omitted).
2. Exclusion of Andrew's treatment records. Prior to trial, the juvenile filed a motion in limine to admit Andrew's treatment records from various programs he attended, which was allowed in part. After a review of the records, the judge ordered that records related to specific instances of hallucination or storytelling were admissible. The juvenile contends that such a limitation was arbitrary and violated his confrontation right where the case rested entirely on the credibility of Andrew. We disagree.
We review the judge's decision to determine whether she abused her discretion. Commonwealth v. Sharpe, 454 Mass. 135, 143 (2009). The judge examined each record individually to determine whether it should be admitted or excluded. She distinguished between statements in the record that were about treatment and generalized statements or notations without context.[5] Contrast Commonwealth v. Polk, 462 Mass. 23, 28-29 (2012) (defendant purported to offer expert testimony to give context to treatment records). After careful examination, she excluded those records that were vague, lacked context, and contained "conclusory statements without further information about the basis for the statements," as their "probative value ... was substantially outweighed by the danger of unfair prejudice." See Commonwealth v. Dwyer, 448 Mass. 122, 129 (2006).
The judge acted within her discretion in her careful and deliberate ruling, which ensured that the juvenile could present substantial evidence regarding Andrew's credibility while excluding vague evidence that would have confused the jury. Moreover, the juvenile suffered no prejudice. Indeed, a significant portion of Andrew's otherwise privileged mental health records were admitted, and the juvenile was allowed to cross-examine Andrew and others based on the records.
3. Evidence of Andrew's reputation for truthfulness. The juvenile contends that it was error for the judge to preclude testimony of Andrew's case manager regarding his knowledge of Andrew's general reputation for truthfulness. We review to determine whether the judge abused her discretion. Commonwealth v. LaPierre, 10 Mass. App. Ct. 871, 871 (1980). Following a voir dire hearing, the judge properly precluded this evidence as the witness lacked a sufficient basis to characterize Andrew's reputation for honesty, and the testimony did not establish a sufficiently numerous group from which to draw a conclusion about Andrew's reputation. "A judge has discretion to exclude evidence of reputation if [she] determines that it is based on the opinions of too limited a group." Commonwealth v. Gomes, 11 Mass. App. Ct. 933, 933 (1981). Moreover, judges must be particularly cautious in admitting character evidence when, as is the case here, they are faced with a mentally impaired victim. See Commonwealth v. Despres, 70 Mass. App. Ct. 645, 650-651 (2007). The judge did not abuse her discretion.
4. Evidence of Andrew's prior sexual knowledge. The juvenile next claims that the judge erred in excluding evidence of Andrew's prior sexual knowledge, specifically his knowledge and practice of masturbation. He contends that if Andrew understood and enjoyed sexual gratification, evidence of his prior sexual knowledge would allow the jury to infer that Andrew consented to the rapes. General Laws c. 233, § 21B, seeks to avoid putting a victim's sexual practices on trial in an effort to discredit his claims of abuse. See Commonwealth v. Fitzgerald, 412 Mass. 516, 523 (1992). Where specific instances of sexual conduct are proffered for a permissible purpose, a judge must still determine whether the evidence's weight and relevance outweigh its prejudicial effect. See Commonwealth v. Parent, 465 Mass. 395, 405 (2013).
Here, the judge allowed the juvenile to ask Andrew and his mother about a conversation the two of them had several months prior to the first complaint. The judge did, however, exclude evidence of Andrew's masturbation practices. Andrew's knowledge of masturbation does not equate with his understanding of anal or oral intercourse. This is particularly true where consent was not an issue on appeal.[6] Contrast Commonwealth v. Reid, 400 Mass. 534, 541-542 (1987) (evidence of masturbation meant to explain physical feature of child victim). The judge did not abuse her discretion where evidence of masturbation would have resulted in the "harassment and ... humiliation" of Andrew. Commonwealth v. Joyce, 382 Mass. 222, 228 (1981) (quotation omitted).
5. Jury instructions. The juvenile argues that the judge erred in instructing the jury on the third element of the youthful offender indictments-the threat or infliction of serious bodily harm. The juvenile requested that the judge instruct the jury that serious bodily harm is permanent disfigurement, loss or impairment of a bodily function, or a substantial risk of death.[7] Instead the judge instructed the jury as follows:
"The term serious bodily harm is not specifically defined in the youthful offender statute. It is not the inherent nature of the alleged crime that you should consider in making this determination, but rather the specific facts of the case before you. In determining what constitutes the infliction or threat of serious bodily harm, the courts have held that sexual penetration alone does not in every circumstance create a threat of serious bodily harm. The act of penetration under certain-certain circumstances can be sufficient evidence of threat or inflictions of serious bodily harm based on the invasive nature of penetration. In making a determination whether the Commonwealth has proved this element beyond a reasonable doubt, you may consider factors such as whether the juvenile defendant held a position of authority over the complainant such as in the case of a parent or a teacher, etcetera, or whether there is an age difference between the juvenile defendant and the complainant, and ... the vulnerability of the complaining witness."
Because the issue was properly preserved, we review to determine whether there was error, and if so whether it was prejudicial. Commonwealth v. Wolfe, 478 Mass. 142, 144 (2017). No such error exists here.
While the statute itself does not define serious bodily harm, there are no cases that require the type of instruction or stringent definition that the juvenile sought. Instead, the Supreme Judicial Court has looked to the totality of the circumstances, based on the ordinary understanding of the serious bodily harm, to determine whether the element is satisfied. See, e.g., Commonwealth v. Clint C., 430 Mass. 219, 226 (1999) (serious bodily harm element satisfied based on juvenile's position of authority over victim, age difference, and invasive nature of the sexual act); Commonwealth v. Washington W., 462 Mass 204, 210 (2012) (serious bodily harm satisfied where juvenile pushed victim to ground to be penetrated). We have done so as well. See Commonwealth v. Todd, 87 Mass. App. Ct. 780, 784 (2015) (authority of juvenile over victim can be considered when assessing threat of serious bodily harm). Here, the juvenile, who was Andrew's caretaker, took advantage of the fact that Andrew was child-like and vulnerable particularly where Andrew did not appear to understand that he was being sexually assaulted. The trial judge properly instructed the jury.
6. Sufficiency of the evidence. When reviewing the denial of a motion for a required finding of not guilty, "we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Oberle, 476 Mass. 539, 547 (2017). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.' " Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting from Commonwealth v. Woods, 466 Mass. 707, 713, cert. denied, 134 S. Ct. 2855 (2014). Over the course of two years, the juvenile repeatedly raped Andrew orally and anally. During one assault, the juvenile dragged Andrew off the bed to the floor. While the judge found that this fact alone was insufficient to prove the youthful offender portion of the assault and battery indictment, it does not preclude its consideration with respect to the rape indictments. See N.M. v. Commonwealth, 478 Mass. 89, 95-96 (2017). There was no error in the judge's determination that there was sufficient evidence for the jury to find that the juvenile's conduct created the threat of serious bodily harm.
7. Misleading the grand jury. The crux of the juvenile's contention on this issue centers around the theory that the Commonwealth excluded records and presented testimony that as a whole improperly vouched for Andrew's credibility, thereby misleading the grand jury in order to secure indictments. This argument is without merit.
A "defendant bears a heavy burden to show impairment of the grand jury proceeding." Commonwealth v. LaVelle, 414 Mass. 146, 150 (1993). Dismissal of an indictment based on such impairment requires proof that "(1) the Commonwealth knowingly or recklessly presented false or deceptive evidence to the grand jury; (2) the evidence was presented for the purpose of obtaining an indictment; and (3) the evidence probably influenced the grand jury's decision to indict." Commonwealth v. Silva, 455 Mass. 503, 509 (2009). The juvenile's claim fails on all three elements.
A witness from DDS testified that, from her review of the records, she did not think that Andrew had a history of lying or a tendency to exaggerate. To the extent that this evidence was later determined to be inaccurate, there was no intent on the part of the prosecutor to mislead the grand jury for purposes of securing an indictment. See Commonwealth v. Champagne, 399 Mass. 80, 84 (1987). Indeed, exculpatory records that presumably would have undermined the credibility of the witness were secured after the juvenile filed his so-called Dwyer motions and therefore were not within the prosecutor's possession at the time of the grand jury proceedings. Additionally, the Commonwealth had no reason to know, as the juvenile's trial counsel acknowledged, about a 2008 police report which indicated that a police officer thought that Andrew could not distinguish between reality or fantasy.[8] In fact, the Commonwealth repeatedly drew the grand jury's attention to Andrew's lies and inconsistent statements, even though the Commonwealth is "not required to present all possibly exculpatory evidence to a grand jury." Commonwealth v. Connor, 392 Mass. 838, 854 (1984). Accordingly, there is nothing in the record, taken as a whole, to suggest that the Commonwealth presented evidence to the jury "with the intention of obtaining an indictment," or that the grand jury otherwise "would not have indicted the defendant." Commonwealth v. Mayfield, 398 Mass. 615, 621 (1986). To the contrary, the grand jury had the opportunity to evaluate Andrew's testimony and compare it to the testimony of other witnesses. The motion was properly denied.
Judgments affirmed.
Adjudication of delinquency affirmed.

The juvenile was indicted as a youthful offender for three counts of rape, one count of indecent assault and battery on a person with an intellectual disability, and one count of assault and battery on a person with an intellectual disability. At the close of the Commonwealth's case, the juvenile moved for required findings of not guilty on all counts. The judge allowed the motion as to one count of rape (finger in the anus) and the youthful offender portion of the assault and battery indictment.

We decline the juvenile's invitation to adopt a heightened standard of competency in assessing a witness's ability to perceive.

The juvenile conflates competency and credibility. The fact that Andrew may have had difficulty differentiating between reality and fantasy goes to credibility, which is solely for the fact finder to assess and was squarely placed before the jury. See Commonwealth v. Figueroa, 413 Mass. 193, 203 (1992) ("[W]here the complaining witness is suffering from mental impairment... evidence of how that impairment might affect [his] capacity to perceive, remember and articulate the alleged events ... can be used to impeach [his] credibility").

The judge excluded records where a nurse or staff simply checked off boxes that were labeled "hallucination" or "delusions" without further explanation. By contrast, she admitted statements in which either Andrew or his mother indicated that Andrew saw things that were not there or admitted to making up stories. A sample of these statements, admitted at trial, include: "[Andrew] told his SW that he has been seeing UFOs but then stated he doesn't know what a UFO is"; "[Andrew] arrived [at] program [with] multiple complaints re: van drivers and sev. other participants ... also admits 'I know I make up stories.' "

During oral argument the juvenile's attorney noted that consent was not an issue on appeal.

This is the definition for serious bodily injury (but not serious bodily harm) for a number of unrelated criminal statutes. See, e.g., G. L. c. 265, § 13A ; G. L. c. 265, § 13K(a ) ; G. L. c. 265, § 13L ; G. L. c. 265, § 15A(d ) ; G. L. c. 269, § 14(a ). Numerous other statutes use different definitions of serious bodily injury. See, e.g., G. L. c. 18C, § 1 ; G. L. c. 21L, § 1 ; G. L. c. 119, § 21. Many other statutes (including some criminal statutes) use the term without definition. See, e.g., G. L. c. 19C, § 5 ; G. L. c. 112, § 129A(c )(2), (3) ; G. L. c. 112, § 135 ; G. L. c. 112, § 135A ; G. L. c. 123, § 36B(1) ; G. L. c. 233, § 23F ; G. L. c. 265, § 22(a ) ; G. L. c. 266, § 102A ½ (b ) ; G. L. c. 277, § 39 ; G. L. c. 279, § 69(a ).

Trial counsel acknowledged that he obtained the report postindictment, pursuant to a public records request and affirmed that he was not alleging that the Commonwealth had knowledge of the report's existence.