NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

24-P-1006                                              Appeals Court

COMMONWEALTH vs. VICENTE SAM.

No. 24-P-1006.

Bristol.     October 9, 2025. – January 29, 2026.

Present:  Ditkoff, D'Angelo, & Wood, JJ.

Indecent Assault and Battery. Practice, Criminal, New trial,
     Assistance of counsel, Redaction. Evidence, First
     complaint, Hearsay, Medical record, Credibility of witness.
     Witness, Credibility.

Complaint received and sworn to in the New Bedford Division
of the District Court Department on July 15, 2019.

The case was tried before Douglas J. Darnbrough, J., and a
motion for a new trial, filed on June 22, 2023, was heard by
Joseph P. Harrington, Jr., J.

Lisa B. Medeiros for the defendant.
Stephen C. Nadeau, Jr., Assistant District Attorney, for
the Commonwealth.

WOOD, J.  Following a jury trial in the District Court, the

defendant was convicted of three counts of indecent assault and

battery on a child, whom we shall call Sue,[1] in violation of

---

[1] A pseudonym.

G. L. c. 265, § 13B.  At trial, the Commonwealth introduced medical records that contained statements by Sue's mother relaying Sue's description of what happened.  The mother was not a first complaint witness.  The defendant moved for a new trial, arguing that his trial attorney was ineffective for, inter alia, not properly requesting redaction of the medical records to exclude the mother's statements.  After an evidentiary hearing, a judge (motion judge) who was not the trial judge denied the motion.  We conclude that because trial counsel failed to object to what amounted to inadmissible hearsay that bolstered Sue's credibility -- the central issue in the case -- the defendant was deprived of effective assistance of counsel.  Therefore, the order denying his motion for a new trial must be reversed, his judgments of conviction must be vacated, and the verdicts must be set aside.

Background.  1.  Trial evidence.  Sue was the Commonwealth's primary witness, and her credibility was a critical issue for the jury.  Sue testified as follows.  In the summer of 2019, when she was thirteen years old, she lived with her mother and sisters on the first floor of a three-story apartment building.  The defendant lived on the second floor.  Sue had known the defendant all her life and "consider[ed] him an uncle."  At a certain point, he "made multiple statements

regarding marriage[,] . . . comments about . . . [i]f [she] ever want[ed] to have sex[,] . . . [and] comments about [her] body."

On July 4, 2019, the defendant drove Sue and one of her younger sisters to see fireworks. After the fireworks, the defendant drove the girls home. During the ride, the defendant touched her thigh. The defendant then moved his hand upward toward her vagina. Sue used her arm to "try[] to restrain him" and also said "no," but the defendant "kept moving towards [her] vaginal area." The defendant then "inserted his two fingers inside of [her]." She asked the defendant to stop at least twice, but he ignored her.

When they got home, the defendant apologized to Sue and told her, "I will never do that to you ever again." Sue later noticed that her vagina "was bleeding." She explained that she assumed she was bleeding because the defendant had inserted his fingers into her vagina, but she acknowledged that she did not know for certain why her vagina was bleeding.

The next day, July 5, 2019, at Sue's request, the defendant drove her to a pool party at her friend's house. They were alone in the car together. At Sue's request, the defendant stopped at a drugstore where Sue selected some cosmetics for the party, which the defendant purchased.

Then, while they were sitting in the car in the drugstore parking lot, the defendant grabbed her left thigh and pulled it

towards him. He moved her shorts aside with his left hand and touched her vagina. Sue responded, "Don't do this." The defendant then put his mouth on Sue's vagina. Sue continued to resist, "trying to shift over [her] legs and saying stop," while also pushing his head away. The defendant stopped only when "[s]omeone pulled up right next to [them]" in the parking lot.[2]

The defendant then dropped Sue off at her friend's house, where she stayed for the next two days. Upon returning home, Sue talked to her mother, who brought her to a hospital. Prior to trial, the judge excluded the substance of the conversation between the mother and Sue because the mother was not a first complaint witness.

No first complaint witness testified. Sue initially had disclosed the sexual assault to her friend, who had hosted the pool party. The friend did not testify, nor was evidence that Sue told a friend about the assault admitted at trial.[3] Sue's mother did not testify at trial.

---

[2] The defense showed the jury surveillance video footage and elicited testimony that it depicted the defendant's truck in the drugstore parking lot, but the video footage did not show any cars pulling up near the defendant's truck before he drove away. The recording was not marked for identification or entered as an exhibit. We remind parties that recordings shown to the jury should, at the very least, be marked for identification.

[3] Prior to trial, the prosecutor sought to substitute the mother as the first complaint witness, but the trial judge found that there had been an inadequate showing that the friend was

The officer who interviewed Sue testified that, initially, Sue seemed "calm." "[A]s she started to relay her story," however, she became emotional "at certain points." She had to stop speaking a couple of times. Her eyes were welling up and her voice was "crackling."

The Commonwealth introduced Sue's hospital records, subject to certain agreed upon redactions discussed infra. As admitted, the exhibit documented that a nurse examined Sue and performed a sexual assault examination[4] but found no evidence of injury or other physical sign of abuse. Within the exhibit was the statement, "Patient presents with Alleged Sexual Assault," and then the phrase, "Alleged Sexual Assault," which was underlined. Immediately under that was a partially redacted statement from Sue's mother:

> "She told me that the first time he touched her was Thursday. They were in the car and he touched her thigh and neck. She told him to stop and then he slid her shorts to the side and put his finger into her. The second time was Friday and she told me [t]hey were in the car again because he was taking her to a sleepover. He asked her help to pick out a shampoo and they went to CVS. When she got back into the car []he touched her again. 'He touched my thigh then moved my shorts over and stuck his fingers in

unavailable and allowed the defendant's motion to preclude the substitution.

[4] It was clear to the jury that the medical records documented a sexual assault examination because the defendant's trial counsel moved to include a two-page document entitled "Sexual Assault Evidence Collection Kit" as part of the medical records. The trial judge granted that request.

me again.'  He pulled over then 'licked my private area and my upper thigh.'  She told him to stop.  He dropped her off at the friend's house where she spent two nights.  He called her to pick her up but [s]he took an Uber home.  He called her today but she told him she felt sick."

2.  Postconviction proceedings.  The defendant filed a motion for a new trial alleging ineffective assistance of counsel.  That motion was heard by a different judge, who held an evidentiary hearing.  Two witnesses testified:  the defendant's first attorney (appointed at arraignment) and successor counsel (trial counsel).

Trial counsel testified that, prior to trial, she determined that the best defense was to challenge Sue's credibility because her claim was not corroborated by forensic evidence or another witness.  Trial counsel determined that there were inconsistencies between Sue's statement to a sexual assault nurse examiner and Sue's medical records, which she planned to exploit at trial.

When the Commonwealth offered Sue's medical records as a trial exhibit, both the prosecutor and the defendant's trial counsel discussed redactions with the trial judge.  They specifically discussed Sue's mother's statement.  The trial judge redacted language at the beginning of the statement and the end of the statement, apparently because it established that

Sue reported the alleged assault to her mother.[5]  When trial counsel was asked why she did not seek to redact the mother's hearsay statement recounting the details of the alleged assault, trial counsel testified, "I think . . . I was focused on trying to redact things so quickly that I probably missed that.  And if I had more time, I would have asked that that be redacted because, yes, that [was] the exact first complaint witness information that I was trying to keep out."

The motion judge ruled that the admission of the mother's hearsay statement was error.  Nevertheless, he denied the motion for a new trial because he found that the mother's statement did not "change[] the outcome as the defense was that the sexual assault did not occur rather than that the interaction was consensual."

Discussion.  1.  Standard of review.  "As a general matter, we review a judge's denial of a defendant's motion for a new trial to determine whether there has been a significant error of law or other abuse of discretion."  Commonwealth v. Caldwell, 487 Mass. 370, 374 (2021).  "[W]e review independently findings

---

[5] In support of these redactions, the trial judge stated, "I don't want anyone to speculate about why the mother's not here." However, the trial judge did not redact language immediately before the mother's hearsay statement that "[t]he history is provided by the mother" and "[Sue] told me that," which established that the mother provided this statement.

made by the motion judge based entirely on documentary evidence." Id. "Further, we make an independent determination as to the correctness of the judge's application of constitutional principles to the facts as found" (quotation and citation omitted). Id. The defendant claims that his representation at trial was not constitutionally adequate. Our inquiry with respect to claims of ineffective assistance of counsel is "whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

2. Trial counsel's failure to seek redaction of inadmissible hearsay from the medical records. Trial counsel's failure to redact the mother's statement from the medical records was unreasonable performance. First, trial counsel did not intentionally seek to include the mother's statement in the medical records. To the contrary, trial counsel admitted that it was an oversight, given that it was "the exact first complaint witness information that [she] was trying to keep out."

Second, the statements at issue were inadmissible hearsay. The trial judge had ruled that, because the Commonwealth had failed to demonstrate that the first complaint witness was unavailable, Sue's mother could not testify as a substitute first complaint witness. Indeed, the Commonwealth concedes that the admission of the mother's hearsay statement within the medical records was error but argues that it was not prejudicial. Accordingly, trial counsel's failure to seek redaction of Sue's mother's hearsay was an error that satisfied the first prong of the ineffective assistance test. See Saferian, 366 Mass. at 96.

As noted above, the motion judge found that the admission of the hearsay statement was error. But he also found that it did not "change[] the outcome as the defense was that the sexual assault did not occur rather than that the interaction was consensual." We disagree with the motion judge's implicit conclusion that the error did not deprive the defendant of an otherwise available, substantial ground of defence.

The fact that the defendant disputed that the sexual assault occurred, and not whether it was consensual, does not negate the effect that the mother's statements may have had on the jury's assessment of Sue's credibility. The dispositive point for the materiality analysis under Saferian is that Sue's credibility was the central issue in the case.

Most important, the hearsay statement repeated the specific details of Sue's allegations. The "repetition of the narrative tend[ed] to enhance the credibility of the complainant to the prejudice of the defendant" (citation omitted). Commonwealth v. Aviles, 461 Mass. 60, 68 (2011). See Commonwealth v. King, 445 Mass. 217, 243 (2005), cert. denied, 546 U.S. 1216 (2006) (repetition of sexual assault complaints "may unfairly enhance a complainant's credibility as well as prejudice the defendant by repeating for the jury the often horrific details of an alleged crime"); Commonwealth v. Trowbridge, 419 Mass. 750, 761 (1995) ("the repetition of fresh complaint testimony creates a risk that the jury will use the details of the fresh complaints as substantive evidence that the crime actually occurred").

Also, neither party requested any limiting instructions about this hearsay statement, and the trial judge made no reference to it in his final jury charge. Because no first complaint testimony was presented by the Commonwealth, the jury did not receive a limiting instruction regarding the use of first complaint testimony at any point. Therefore, the jury were permitted to consider it for all purposes, including its truth.

The admission of hearsay that provides the only significant corroboration of an alleged victim's accusation without a limiting instruction creates a substantial risk of a miscarriage

of justice. See Trowbridge, 419 Mass. at 762 (reversing indecent assault and battery on child conviction based on erroneous admission of corroborating hearsay where child's credibility was central issue; "[w]ithout proper instructions, there was a substantial risk that the fresh complaint testimony would be used as substantive evidence of the crime, and lend undue credibility to the complaining witness"); Commonwealth v. Smith, 47 Mass. App. Ct. 551, 557-558 (1999) (erroneous admission of corroborating hearsay in sexual abuse case without limiting instructions created substantial risk of a miscarriage of justice; "the credibility of the complainant and her mother were crucial to the Commonwealth's case"). See also Commonwealth v. Esteves, 429 Mass. 636, 639-641 (1999) (reversing child rape conviction based on erroneous admission of corroborating hearsay; "[t]he credibility of the complainant was central to the Commonwealth's case");[6] Commonwealth v. Parkes, 53 Mass. App. Ct. 815, 820-821 (2002) (erroneous admission of corroborating hearsay created substantial risk of miscarriage of justice in single witness identification case).[7]

_____

[6] In Esteves, the defendant objected to the admission of the hearsay, so the Supreme Judicial Court applied the prejudicial error standard. See Esteves, 429 Mass. at 638-639.

[7] Because we vacate the defendant's judgments of conviction and remand the case for a new trial in the Commonwealth's discretion, we do not address the defendant's additional

Conclusion.  The order denying the defendant's motion for a new trial is reversed.  The judgments are vacated, the verdicts are set aside, and the case is remanded for further proceedings consistent with this opinion.

So ordered.

---

arguments that the failure to interview the first complaint witness, to show additional video footage to the jury that the defendant argues was exculpatory, and to redact multiple references to "sexual assault" from the medical records were ineffective.