COMMONWEALTH vs. PETER HRYCENKO & another.
(and seven companion cases[1]).

Norfolk. June 14, 1991. - September 30, 1991.

Present: KASS, FINE, & GREENBERG, JJ.

*Rape. Grand Jury. Practice, Criminal*, Grand jury proceedings, Severance, Argument by prosecutor, In camera inspection. *Evidence*, Grand jury proceedings, Photograph, Judicial discretion, Privileged communication, Hospital record. *Privileged Communication.*

In a criminal case, the minutes of the grand jury proceedings demonstrated that the grand jury understood their function to decide whether the evidence was sufficient to establish probable cause, and, in any event, the evidence presented to the grand jury was more than sufficient to indict under the standards described in *Commonwealth v. McCarthy*, 385 Mass. 160 (1982). [426-428]

In a criminal case the defendant did not demonstrate there were any intentional misstatements in the grand jury testimony of a police witness. [428-429]

In the circumstances of a criminal trial in which the judge had properly exercised his discretion to exclude from evidence certain photographs on the ground that they were more inflammatory than probative, it was error requiring reversal for him to send the photographs to the jury in response to their request during deliberations. [430-432]

In the circumstances of a criminal case, there was sufficient connection between indictments for possession of a controlled substance and indictments for a sexual assault to warrant the judge's denial of the defendants' motion to sever trial of the offenses. [432-433]

At the retrial of indictments, comment with respect to a certain witness's not being called to testify would be better omitted [433]; and defense counsel were to be permitted to examine the victim's mental health treatment records in accordance with *Commonwealth v. Stockhammer*, 409 Mass. 867 (1991) [433-434].

There was no merit to a criminal defendant's contention on appeal that there was insufficient evidence to support the guilty verdicts. [434]

---

[1]Three of the companion cases are against Peter Hrycenko and four are against Mary Hrycenko.

INDICTMENTS found and returned in the Superior Court Department on January 11, 1989.

The cases were tried before *Patrick J. King*, J.

*Lee A. Drizin* for Peter Hrycenko.

*Carol A. Donovan*, Committee for Public Counsel Services (*Cathleen Bennett*, Committee for Public Counsel Services, with her) for Mary Hrycenko.

*Robert C. Cosgrove*, Assistant District Attorney, for the Commonwealth.

KASS, J. During the course of their trial on indictments charging aggravated rape, kidnapping, assault by means of a dangerous weapon, threatening to kill, and possession of controlled substances — to all of which a jury returned verdicts of guilty[2] — pictures were offered as evidence by the prosecution. The trial judge ruled that certain of the photographs were more inflammatory than probative, and that they ought not to be published to the jury. Those pictures were, however, sent to the jury in response to a question the jurors posed after they had commenced their deliberations. We think allowing the jury to see the pictures after closing arguments and charge, particularly without limiting instructions, was an error which requires a new trial. The defendants also appeal from the denial of motions to dismiss the indictments founded on assertions of defects in the grand jury proceedings, and they raise several other points which require some, albeit brief, consideration.

1. *Asserted defects in the grand jury proceedings.* (a) In an orientation speech to the grand jury, a judge of the Superior Court said the following:

> "Remember that your job here is very different than a job that a petit jury would serve in a case. Your job is before trial, to listen to the evidence that's been presented to you, and then to decide whether or not, based on that evidence and assuming that it is uncontradicted and true, deciding whether or not to charge

---

[2]There were multiple indictments in these categories of offenses. As to some of those indictments the jury returned verdicts of not guilty.

someone with a crime. Again, that's very different from the role a jury would serve after that jury has been selected. At that point, the jury would then hear the evidence from both sides, weigh the evidence, and then decide whether or not the Commonwealth has proven its burden beyond a reasonable doubt that a person is guilty. That's not your job. Keep that important distinction in mind.

"Now, as grand jurors, you do, as I say, have a very heavy responsibility. Remember that if someone is subject to indictment and charged with a crime, there's a certain amount of stigma, embarrassment that's associated with that charge . . . . Oftentimes someone goes through a trial and they're subsequently found not guilty. That won't remove the stigma; keep that in mind. It's a very heavy duty that you have, to listen and make some decision as to whether or not you're going to return an indictment."

The defendants focus on the phrase, "based on that evidence and assuming that it is uncontradicted and true, deciding whether or not to charge someone with a crime." They express alarm that this language effectively told the grand jurors that they were to accept the government's evidence as gospel and left them no choice but to return an indictment. The judge's remarks about the duties of the grand jury were inelegant and it would have been better had they described the task of the grand jurors: to decide whether the evidence submitted to them establishes probable cause, i.e., reasonable grounds to believe, that a specified offense has been committed and that the offense was committed by the accused. See *Jones* v. *Robbins* 8 Gray 329, 344 (1857); *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982).[3] Read in the context

---

[3]Indeed, the model general instructions to grand juries recommended by the Superior Court (1990) are as follows: ". . . [I]t is not your function to determine the guilt or innocence of any person or entity whose matters have been brought before you. Instead, the Assistant District Attorney will present evidence to you which will refer to specific individuals and certain activities of those individuals. You will then be asked to decide whether

of the two paragraphs set out in full above, however, the judge's language could not plausibly have been heard by the grand jury as the defendants suggest. The judge emphasized that the jurors had a duty not to accuse carelessly, a duty they could not discharge if they did not to some degree regard evidence presented to them appraisingly. Members of a grand jury, for example, are put to the task of choosing between different versions of events described by a series of witnesses. See *Commonwealth v. McLeod*, 394 Mass. 727, 734 (1985). Minutes of the grand jury reflect that the jurors in fact did not supinely accept the evidence presented by the government without inquiry. The jurors, for example, manifested skepticism about aspects of testimony given by the victim and probed inconsistencies between her testimony and that of a police officer. We are satisfied, from the dialogue between members of the grand jury and the prosecution, that the grand jurors understood their function. The evidence presented was more than sufficient to establish probable cause under the standards described in *Commonwealth v. McCarthy*, 385 Mass. at 164.

(b) A principal witness before the grand jury was Harold Donovan, a Sharon police officer. The defendants complain that Officer Donovan's account to the grand jury of the kidnapping and repetitive rape of the victim failed to touch on inconsistencies between various accounts she had given, and that his testimony overstated the amount of lidocaine found in the defendants' residence in Sharon.[4] The defendants' suggestion is that the grand jury, therefore, were imposed upon. Grand jury proceedings may be impaired by withholding known exculpatory evidence, *Commonwealth v. Connor*, 392 Mass. 838, 854 (1984), distorting a police report through intentional deletions, *Commonwealth v. O'Dell*, 392 Mass. 445, 448-449 (1984), and knowing use of false testimony, *Commonwealth v. Salman*, 387 Mass. 160, 166-167 (1982). See

the evidence presented is sufficient to establish probable cause. Probable cause is reasonable grounds to believe that an offense has been committed and that the offense was committed by the accused."

[4]The defendants also point to allegedly false statements by the victim.

generally *Commonwealth* v. *Mayfield*, 398 Mass. 615, 620-621 (1986). Those cases illustrate what may impair grand jury proceedings; they are not the basis for an inclusive list. *Id.* at 620. What they have in common is intentional manipulation of evidence that was significant to the grand jury. *Id.* at 621.

Nothing of the sort occurred here. There is no showing that Officer Donovan intentionally misstated that the lidocaine found in the Hrycenko residence weighed 14 grams (it was actually 2.4 grams) or that he edited the victim's statements. He had interviewed the victim more than once, and it occasions no surprise that there may have been variations in details from one telling of her story to another. The essential elements of that story did not change, and the police officer was not called upon to highlight minor differences — assuming that he noticed them. The victim's denial that she had any knowledge of cocaine was false but there is no evidence that the prosecution had contrived the victim's self-protective statement. Moreover, the subject was of peripheral significance at the indictment stage.

2. *Facts.* In considering the other points raised by the defendants on appeal, a summary of those facts which the jury were warranted in finding will be of some help. As always, we take the evidence on the basis most favorable to the Commonwealth. *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 872 (1991). *Commonwealth* v. *Taghizadeh*, 28 Mass. App. Ct. 52, 53 (1989). While visiting a friend in Bridgewater, the victim imbibed a considerable amount of alcohol. At 6:00 A.M., on September 25, 1988, she began to make her way home to Brockton by hitchhiking. Mary Hrycenko, who was driving, and her husband, Peter, picked her up. The victim noticed the car was not going in her direction, called this to their attention, and asked to be let off. Peter, who was in the passenger seat, turned around, pointed a firearm and told her she was going with them. Mary, as recounted by the victim, amplified: the victim "was going to have sex with her [Mary's] husband, and [the victim] was going to make him

orgasm, and that she [Mary] was going to sit there, and she was going to watch us."

Once inside the house, Mary also brandished a gun, and the victim was forcibly disrobed. Peter.forced the victim to have oral and vaginal sex with him while Mary watched. Between sexual assaults, Peter showed the victim pictures of women, naked and clothed, that he and Mary "partied with." He asked the victim if she knew any of the women and whether she wanted to party with the Hrycenkos as the women in the photos had.

Over a period of about sixteen hours, the victim was compelled to engage in eight acts of fellatio and eight acts of vaginal sexual intercourse. During the course of the day, Peter snorted and freebased (by smoking) cocaine. The victim was coerced into freebasing cocaine. Again, under compulsion, the victim posed naked with Peter's German shepherd dog while he took Polaroid pictures of her. He then required her to take pictures of him, with and without an erection. Ultimately the victim made her escape under the guise of going out to procure more cocaine for the Hrycenkos. She made her way to the house of a friend, to whom she reported the rape. The friend at once summoned police. The defense was that the complainant had consented to acts of sexual intercourse with Peter Hrycenko.

3. *The photographs.* Certain photographs were received in evidence and shown to the jury. They included a torso photograph of a man (apparently Peter Hrycenko) with a partial erection, four photographs of the victim, naked, with the Hrycenko's German shepherd dog, a picture of the victim taken in the back seat of the Hrycenko's car, and a picture taken earlier of the victim (unbeknownst to her) outside a Salvation Army office. Those photographs were received in evidence to verify the testimony of the victim that photographs were taken of her during the time she was obliged to stay with the Hrycenkos. The other pictures were photographs which the Hrycenkos had exhibited to the victim. She was shown those photographs at trial and testified that those were, indeed, the photographs she had been given to look at.

In the main, those photographs were of women posing nude. Those additional photographs were offered as further verification of the victim's account of what had happened while she was with the Hrycenkos. As to this second set of photographs the judge ruled that the photographs were more inflammatory than probative, and, therefore, they were not to be shown to the jury nor sent to the jury when they retired to deliberate. Although the judge had the second set of photographs marked as an exhibit, the effect of withholding the photographs from the jury was to give those photographs the status of proffered evidence marked for identification; i.e., they were not, despite comments by the judge to the contrary, admitted in evidence.

Whether photographs are so inflammatory as to outweigh their probative value is a determination to be made by the trial judge in the exercise of sound discretion. *Commonwealth* v. *D'Agostino*, 344 Mass. 276, 279 (1962). *Commonwealth* v. *Ramos*, 406 Mass. 397, 406-407 (1990). Any defendant who urges that such discretion has been abused must show that no conscientious judge, acting intelligently, would have allowed the pictures in evidence. *Commonwealth* v. *Horton*, 376 Mass. 380, 398 (1978). In the instant case, we think that the trial judge would have been in the allowable range of discretion whether he had excluded or allowed introduction in evidence of the second set of photographs.

In his instructions to the jury, the judge said that "certain photographs that were allegedly shown [the victim] at the Hrycenko home, depicting nude individuals" would not be shown to the jurors "since there is no dispute as to what those photographs show." During deliberations, the jury sent the following question to the judge: "Can we please see the other photos of the people that Mr. Hrycenko took pictures of? If not, why were we prevented from seeing them?" Now, the judge was concerned that the jury might be imagining the pictures to be rather worse than they were. Over the objection of defense counsel, the judge sent the second set of photographs to the jury, without additional instructions, in a sealed envelope. Defense counsel had asked that the jury be

instructed that the pictures were not of any person connected with the case, and that they depicted no crime.[5]

We are of opinion that it was error to send to the jury as exhibits for their consideration photographs which the judge had earlier in effect excluded by ruling that they would be withheld from the jury, precisely because of their inflammatory effect. As we have indicated, had the judge decided that the jury should see the pictures when first offered, despite their inflammatory nature, such a decision would have been in the judge's discretion. In those circumstances, however, defense counsel would have been in a position to defuse the effect of the photographs through examination, cross-examination, and through closing arguments. At the very least, the jury ought to have been reminded of the limited basis for which the pictures were to be considered and that they depicted no crime nor any individual involved in the case. Sent to the jury in the manner they were, the photographs constituted something of a wild card. Most of the second set of photographs were salacious and they permitted the inference that the Hrycenkos maintained an ongoing den of iniquity. Perhaps they did, but the pictures were not so dreadful that they could not perhaps have been explained away. Defense counsel never had the opportunity to make argument which would have moderated the effect of the pictures on the jury or to put questions to witnesses to that end. Because of our uncertainty about the effect of what was, as a practical matter, an expansion of the record after the jury had retired to deliberate, we conclude that the defendants are entitled to a new trial. We express our views as to certain other points which the defendants have raised on appeal and which may recur in the event of a new trial.

4. *Motion to sever.* Defense counsel made a motion to sever the indictment concerning possession of lidocaine (often used as a medium for cutting cocaine) on the ground that this offense was unrelated to the sexual assault and was prej-

---

[5]The judge had given the substance of such a limiting instruction at the time the victim had identified the second set of photographs on the witness stand.

udicial to the defendants. The motion was denied. Severance is another of those decisions as to which substantial discretion is vested in the trial judge. *Commonwealth* v. *Blow*, 362 Mass. 196, 200-201 (1972). It is appropriate to sever indictments when the offenses are wholly unrelated. *Commonwealth* v. *Hoppin*, 387 Mass. 25, 33 (1982).

In this case, the lidocaine is not wholly unrelated. The victim had testified that she had been coerced into "freebasing" cocaine. Use of cocaine seemed to be an integral part of the Hrycenko mode of "seduction." There was sufficient connection to warrant denial of the motion to sever. Parenthetically, possession of a substance which dilutes another substance, in the context of this case, does not present an instance of compelling prejudice. See *Commonwealth* v. *Montanez*, 410 Mass 290, 304 (1991).

5. *Reference to witness not called.* In his closing argument, the prosecutor, responding to a remark made in a defense closing argument, said, "It's been indicated to you that you didn't hear from Joe Shaheen [he was the friend to whom the victim reported her sexual assault]. . . . Joseph Shaheen was not called. He's available to anyone who wanted to call him. All you have to do is serve a subpoena, locate him, and get him here." This was not unreasonable response to a comment of one of the defense lawyers that the case had begun with a "false accusation which was delivered to a person named Joe Shaheen, whom you have never seen on this witness stand." In any event, the judge instructed the jury "that with regard to the reference to Mr. Shaheen the defendants had no burden to call Mr. Shaheen as a witness, and you should draw no inference from the fact that he was not called by the defendants as a witness." In a new trial, it would be better if neither party were to refer to Shaheen's not being called as a witness. If he is not called, and attention is drawn to that, the curative instruction is correct.

6. *Access to victim's mental health treatment records.* Defense counsel were permitted to examine records pertaining to the victim's participation in 1988 in a detoxification program, and were allowed access to records involving an alco-

hol education program in which the victim had participated. The judge refused to allow defense counsel to examine records concerning the victim maintained by the Crisis Stabilization Unit of the State Department of Mental Health ("DMH") for the years 1985-1988. Prior to denying access to defense counsel, the judge had examined the DMH records and had concluded there was nothing exculpatory in them. Defense counsel objected, explaining that they would be looking for indication in the DMH records of manic depressive psychosis. They also wished to have an expert look at the records for information bearing on the victim's ability to perceive, recollect, and recall. The judge's denial of access was made before the opinion of the court in *Commonwealth v. Stockhammer*, 409 Mass. at 880-884. Upon retrial, defense counsel are to be permitted to examine the DMH records with appropriate protective measures to be established by the trial judge. If counsel determine there is some information which could be useful to the defense, "[t]he judge then shall conduct an in camera hearing concerning the admissibility of any information in the records that counsel may wish to use at trial." *Id.* at 884.

7. *Sufficiency of evidence.* At the end of the brief on behalf of the defendant Peter Hrycenko, there is a sketchily developed argument that he was entitled to allowance of a motion to set aside the verdicts and to the entry of verdicts of not guilty. There is nothing in this. Ample evidence was adduced which, if believed, would support the verdicts.

The judgments are reversed and the verdicts are set aside. The convictions which were placed on file are vacated, and the cases shall stand for a new trial.

*So ordered.*