## COMMONWEALTH *vs.* ROBERT C. HALSEY.

No. 94-P-477.

Berkshire. April 9, 1996. - August 26, 1996.

Present: GREENBERG, FLANNERY, & LENK, JJ.

*Search and Seizure,* Plain view, Warrant, Probable cause. *Constitutional Law,* Search and seizure, Self-incrimination. *Evidence,* Relevancy and materiality, Inflammatory evidence, Corroborative evidence, Expert opinion, Credibility of witness.

In a prosecution for sexual abuse of children, police officers' seizure of sexually explicit pictures and x-rated video tapes in plain view at the time they executed a lawful search warrant in the defendant's home and car was lawful, where the officers had probable cause to believe that the materials bore a nexus to the crimes under investigation. [201-203]

At the trial of indictments for sexual abuse of children, no substantial risk of a miscarriage of justice was created by the admission of testimony regarding sexually explicit pictures and movies that the victims described as being in the defendant's house and a police witness described as having been seized there, where the general references to the material were probative. [203-204]

At the trial of indictments for sexual abuse of children, the testimony of a therapist and fresh complaint witness did not improperly vouch for the credibility of the victims. [204]

At a criminal trial, testimony of the defendant's demeanor during questioning by the police was properly admitted on the issue of the voluntariness of the defendant's statements to police. [204-205]

INDICTMENTS found and returned in the Superior Court Department on January 28, 1993.

A pretrial motion to suppress evidence was heard by *Daniel A. Ford,* J., and the cases were tried before him.

*Patricia A. O'Neill,* Committee for Public Counsel Services, for the defendant.

*Eric Neyman,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. The defendant was convicted by a Superior

Court jury on four indictments for rape of two children (brothers) under sixteen (G. L. c. 265, § 22A); two indictments for unnatural and lascivious acts on a child under sixteen (G. L. c. 272, § 35A); two indictments for assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A); eight indictments for assault by means of a dangerous weapon (G. L. c. 265, § 15B); and nine indictments for assault and battery (G. L. c. 265, § 13A). Except for three of the assault and battery counts, all of the convictions involved eight year old twin brothers as victims. Two principal issues are raised on appeal: (1) whether seizure of adult pornographic materials that were not particularly described in the search warrant from the defendant's home and car was unlawful; and (2) whether admission of evidence concerning the defendant's possession of these materials denied him a fair trial. There are two other evidentiary points which we shall also discuss.

1. *Motion to suppress.* The defendant argues that the seizure of a "black light" poster depicting a naked man and woman, a box containing eight X-rated video tapes, a scrapbook containing pornographic pictures, five photographs of nude women, and a pornographic cartoon, which were not mentioned in the search warrant, violated his rights under both the State and Federal Constitutions. All of the items found during the course of the search were in plain view.[1] We conclude that the seizure of the materials was lawful as evidence relevant to establish the defendant's connection to the crimes for which he was charged.

As the principal investigating officer, Lieutenant Robert Scott, who was present at the defendant's home at the time the search warrant was executed, testified at the motion hearing (over the defendant's objection) that pedophiles often use various forms of pornography as a way to initiate children into sexual activity. His opinion was based upon specialized training. During a twenty-year career Scott had investigated nearly 200 such cases. In his view, the children's story was corroborated by the defendant's possession of these materials even though they had not yet specifically mentioned any of them in their statements to the police.

---

[1]The officers entered and searched the defendant's home and automobile pursuant to valid search warrants. The defendant stipulated during the motion hearing that the items seized were found in places where the police had a right to search. ·

The United States Supreme Court has held that the Fourth Amendment to the United States Constitution does not require a distinction prohibiting the seizure of items of evidential value only (mere evidence), as opposed to the seizure of contraband or of the instrumentalities or fruits of a crime. *Warden* v. *Hayden*, 387 U.S. 294, 300-301 (1967). The Supreme Judicial Court is in accord. See *Commonwealth* v. *Wojcik*, 358 Mass. 623, 627 (1971); *Commonwealth* v. *Murray*, 359 Mass. 541, 547 (1971). Evidence not described in a valid search warrant but inadvertently discovered and having a nexus with the crime under investigation may be seized at the same time as the material described in the warrant. *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 303 (1979). The two-pronged test in the case of "mere evidence" (as distinct from contraband or instrumentalities used to perpetrate a crime) is whether the officers recognize it to be plausibly related as proof of criminal activity of which they were already aware, *Commonwealth* v. *Bond*, 375 Mass. 201, 206 (1978), and whether "the evidence sought will aid in a particular apprehension or conviction." *Warden* v. *Hayden*, *supra* at 307.

The instant case passes muster because Scott's experience in this type of case reasonably led him to believe that the materials were connected to the defendant's suspected pederastic involvement. That circumstance was already known to the police, by virtue of the children's reports of being sexually abused by him. See *Texas* v. *Brown*, 460 U.S. 730, 746 (1983) (Powell, J., concurring). Further, there is no reason to assume that the police were engaged in a general exploratory search for anything that might incriminate the defendant not mentioned in the warrant. Cf. *Commonwealth* v. *Rand*, 363 Mass. 554, 558 n.2 (1973). The items were found in plain view in the defendant's bedroom, and Scott reasonably recognized the pornography as a potential "tool of the trade" and as evidence.

One commentator puts it thus: "Because the situations are so varied, it is difficult to state precisely what it takes to establish a sufficient nexus, on a probable cause standard, between a discovered but unnamed item and the crime for which the warrant issued." LaFave, Search and Seizure § 4.11(c), at 695 (3d ed. 1996). In this case, because of Scott's knowledge of the children's reports of sexual activity with the defendant and his opinion about the possible role of pornographic materials, seizure of them did not depend upon speculation.

That the defendant could have legitimately possessed these items for lawful personal use does not negate the propriety of the seizure. As stated, the officers had probable cause to believe that the materials bore a nexus to the crimes under investigation. *Commonwealth* v. *Feijoo*, 419 Mass. 486, 498 (1995). All of the items were "plausibly" related to the criminal activity of which the officers were already aware. *Commonwealth* v. *Bond*, 375 Mass. at 206. *Commonwealth* v. *Rodriguez*, 378 Mass. at 303. Here, we conclude that the prosecution satisfied its burden to show that the seizure fell within the narrow exception of permissible seizures conducted outside the scope of valid warrants.

2. *Admission of Scott's testimony regarding the items seized.* None of the materials seized in the search was admitted as evidence at trial. However, Scott testified to the nature and content of the items involved. In his view, the children's story was corroborated by what was discovered during the search. The defendant's trial counsel made no objection to this testimony, which is, therefore, reviewed only to determine if its admission created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Ramos*, 402 Mass. 209, 217 (1988).

Scott's testimony concerning the seized materials was properly admitted. It corroborated what the children told the jury. One child testified that the defendant showed him pictures of people "mating" and of "people naked." He also stated that while he was inside the defendant's house, the defendant showed him movies of "naked people." His brother's account on the point was different only in form, not in substance. Their testimony, coupled with Scott's testimony regarding the defendant's initial denial that he possessed the items, provides a sufficient basis for the admission of the contested testimony.

On appeal, the defendant argues that the evidence was so inflammatory as to deny him a fair trial. It is settled that, on proper foundation, the prosecution may adduce relevant evidence of lawfully seized materials and comment upon such materials seized under the authority of a search warrant. Whether sexually explicit photographs or other similar materials "are so inflammatory as to outweigh their probative value is a determination to be made by the trial judge in the exercise of sound discretion." *Commonwealth* v. *Hrycenko*, 31 Mass. App. Ct. 425, 431 (1991). The prosecution was entitled

to present evidence that both corroborated the children's testimony and established motive. *Commonwealth* v. *LeFave,* 407 Mass. 927, 934-935 (1990). In this situation, the general references to the content of the materials were probative and did not depict the defendant as particularly depraved. Contrast *Commonwealth* v. *LaSota,* 29 Mass. App. Ct. 15, 26-27 (1990). Further, the judge gave a detailed limiting instruction informing the jurors of the only purpose (corroboration of the children's testimony) for which they might consider Scott's testimony about the pornography. If error were shown in the admission of Scott's testimony concerning the seized materials not specifically mentioned by the children, its cumulative quality would lead us to conclude that it presented little risk of a miscarriage of justice.

3. *Other matters relating to the trial.* The remaining claims of error by the defendant concerning the conduct of the trial are susceptible of summary comment. Jane Weinstein, a therapist who testified as a fresh complaint witness, saw the children after their disclosures. She testified to the protocols used during the interviews. The defendant now argues that her testimony improperly "vouches" for the victims' credibility. Weinstein's testimony did not endorse the children's testimony. She described her protocol for interviewing children generally. She refrained from comparing the complainants in the case with characteristics of sexually abused children. See *Commonwealth* v. *Richardson,* 423 Mass. 180, 186 (1996); *Commonwealth* v. *Allen,* 40 Mass. App. Ct. 458, 465-466 (1996). Contrast *Commonwealth* v. *Trowbridge,* 419 Mass. 750, 759-760 (1995); *Commonwealth* v. *Perkins,* 39 Mass. App. Ct. 577, 582-584 (1995); *Commonwealth* v. *Brouillard,* 40 Mass. App. Ct. 448, 451-454 (1996). Nothing appears in her testimony which amounts to an expert opinion that the children's claims of sexual abuse were probably true or that otherwise "intruded on the function of the jury to assess the credibility of [a] child witness." *Commonwealth* v. *Trowbridge,* 419 Mass. at 756.

Last, the defendant contends that Scott's testimony regarding the defendant's demeanor both at the time of his arrest and after he had been given his Miranda rights, constituted a violation of his right to remain silent under art. 12 of the Massachusetts Declaration of Rights and the Fifth Amendment to the United States Constitution. Asked by the prosecu-

tor to describe the defendant's demeanor during questioning, Scott replied, "He seemed calm, lucid. That would be my best description of his demeanor." When queried whether the defendant's deportment changed after being advised of the charges, Scott said, "No." Nothing in this brief exchange parallels the prejudice found in *Commonwealth* v. *Haas,* 373 Mass. 545, 558-562 (1977); *Commonwealth* v. *Mahdi,* 388 Mass. 679, 694-698 (1983); or *Commonwealth* v. *King,* 34 Mass. App. Ct. 466, 468 (1993), three cases relied upon by the defendant. As the case was presented at trial, there was no disagreement that the "demeanor" testimony was offered under the second step of our "humane practice" regarding the voluntariness of the defendant's statements to the police. See Smith, Criminal Practice and Procedure §§ 389, 392 (2d ed. 1983). Put another way, his physical, nontestimonial characteristics may have informed the jury on the issue of voluntariness. Unlike the cases cited by the defendant, Scott's testimony was not elicited for the sole purpose of having the jurors infer guilt from the defendant's invocation of his right to remain silent. There was no error.

*Judgments affirmed.*