## COMMONWEALTH *vs.* HUBERT JAUNDOO.

No. 03-P-1093.

Hampshire. October 4, 2004. - July 20, 2005.

Present: GELINAS, SMITH, & GREEN, JJ.

*Evidence,* Inflammatory evidence, Obscenity, Videotape, Photograph, Prior misconduct, Pattern of conduct, Corroborative evidence.

At the trial of indictments charging rape of a child and indecent assault and battery on a child who has not attained the age of fourteen, the judge abused his discretion in admitting in evidence testimonial description of pornographic material, found in the defendant's home, consisting of videotapes, magazines, over one hundred pornographic images, and a crystal cup engraved with pornographic images, and in permitting submission of a substantial quantity of that material to the jury, where much of the material had no direct bearing on the complainant's testimony and thus was not corroborative, where the judge's limiting instruction regarding the material was incapable of overcoming the material's prejudicial effect, and where the judge did not, at the time that he ruled on the admissibility of the bulk of the material, conduct the analysis necessary to determine whether the probative value of the material outweighed the risk of inflaming the jury. [60-64]

INDICTMENTS found and returned in the Superior Court Department on March 7, 2002.

The cases were tried before *Judd J. Carhart,* J.

*David P. Hoose* for the defendant.

*Steven Greenbaum,* Assistant District Attorney, for the Commonwealth.

GELINAS, J. We consider in this case whether the judge at a criminal trial abused his discretion in allowing in evidence testimonial description of pornographic material consisting of videotapes, magazines, over 100 pornographic images, and a crystal cup engraved with pornographic images, and permitting submission of a substantial quantity of that material to the jury, such that a new trial is required. We conclude that there must be a new trial.

The defendant was indicted by a Hampshire County grand jury on five counts of rape of a child by force and four counts of indecent assault and battery on a child who has not attained the age of fourteen. The complainant was the daughter of the defendant's girlfriend. Trial was held in February of 2003. At the close of the Commonwealth's case, the trial judge entered findings of not guilty to so much of the rape counts as alleged force and dismissed two indecent assault and battery counts in their entirety. A jury convicted the defendant on the remaining charges, and he was sentenced to various terms of incarceration and probation.

At trial, the evidence tended to show the following. The defendant and the complainant's mother struck up a relationship and the defendant, the mother, and her two daughters were living together at the times in question. The father of the complainant was deceased, and had never been a part of the complainant's life. The complainant, eight years old at the time of the incidents, also established a relationship with the defendant, and was observed mimicking some of her mother's amorous attentions, such as kissing the defendant on the cheek, hugging him, and bringing him refreshments. There was evidence that the complainant had on at least one occasion observed her mother performing oral sex on the defendant.

The incidents leading to the complaints were all alleged to have taken place within a short period of time in late 2001 and early 2002. The complainant and the defendant were rarely alone. The complainant testified that on three occasions, while her mother was away from the home, the defendant had her perform oral sex on him, that on another occasion he penetrated her vaginally, and that on yet other occasions he had her suck his breast and that he sucked on her breast. The complainant also testified that the defendant showed her a crystal cup, engraved with pornography,[1] and that he showed her a pornographic videotape and some pornographic magazines.

Following the complainant's report of the incidents to her fellow students, the allegations came to the attention of the authorities.

---

[1]At the motion to suppress, the "crystal cup" is described as a "shot glass" with pictures of individuals engaged in sexual acts.

A police detective interviewed the defendant at his home. The detective testified that in the interview the defendant maintained that he had done nothing that might be interpreted as sexually inappropriate. He also initially denied that he had any pornographic material in the home. The detective secured a search warrant for the home and recovered twenty-one pornographic videotapes, several magazines with pornographic pictures, and over 100 additional pornographic images,[2] as well as the crystal cup.[3] When confronted with the pornographic materials, the defendant stated that he was only holding them for a friend. He again denied having touched the complainant in an inappropriate manner. At trial, the defendant testified that he had been alone with the complainant on only two occasions, and then for only brief periods of time. In his testimony he maintained that nothing of a sexual nature had taken place and he denied having touched the complainant in an inappropriate manner.

After denial of his motion to suppress, the defendant sought, by motion in limine, to reduce the number of items to be introduced in evidence. The Commonwealth initially indicated that it would only move to introduce those items that it maintained would correspond to specific descriptions given by the complainant in prior interviews, and to which it anticipated she would testify. Over objection of counsel, the trial judge ruled that one videotape, certain magazines, and the crystal cup might be introduced, albeit with limiting instructions. The Commonwealth indicated that it did not plan to show the videotape.

At the beginning of the second day of trial, the prosecutor informed the court that she intended to mark the magazines and the videotape for identification only. Defense counsel renewed his objection. The court overruled counsel's objection observing that, given the complainant's age, her description of the sexual

---

[2]In his brief, the defendant asserts that some of the material seized was placed in a brown bag that was later given to the jury, including sixty-five two-sided "Swedish Erotica" pages, each with a hardcore pornographic photograph, for a total of 130 images; twelve pages from a pornographic calendar; four pornographic magazines; and a "Diamond Collection Book," containing dozens of hardcore pornographic images.

[3]The defendant filed a motion to suppress the evidence seized pursuant to the warrant. No appeal was taken from the denial of the motion.

acts depicted on the videotape had been, despite certain discrepancies, sufficiently accurate. His ruling permitted the material to be marked for identification.

The complainant then testified that the defendant had shown her a videotape, some magazines, and the crystal cup. The Commonwealth followed with an offer of testimony from the police detective regarding the videotape and magazines. Prior to the detective's testimony, defense counsel requested a limiting instruction with regard to those materials. At this time the prosecutor informed the court that she had decided to introduce the videotape as an exhibit for the jury. The judge gave a limiting instruction advising the jury that the purpose of the testimony regarding the pornographic videotape and magazines was to help them assess the complainant's credibility, and not to show that the defendant was a "bad person," or that he wrongfully possessed pornography. The police detective then testified, giving a general description of the content of the videotape, describing more specifically a scene involving a black male, a white male, and two white females engaging in a number of sex acts. The complainant in her testimony had given an essentially similar description of this portion of the videotape.

A State trooper who had accompanied the police detective during the execution of the search warrant described the seizure of pornographic magazines, books, and images. These he specified as seventy-seven pornographic images, three magazines, and two books, "Petals on the Wind" and "Spanish Verbs." At trial he removed these items from a brown paper bag used for storing the evidence, replacing them in the bag after identifying them. The prosecutor then requested that the bag containing the material be marked for identification only. The judge requested a sidebar conference, at which he inquired whether defense counsel objected to such a procedure. Defense counsel did not object to the bag being marked for identification and informed the court that he intended to question the trooper about the materials. At the suggestion of the judge,[4] the prosecutor asked that the bag containing the pornographic materials be placed in

---

[4] The judge stated "You try the case any way you want. The problem I have is you are describing something and showing it to him but you're not putting it in evidence."

evidence, rather than merely marked for identification. By agreement, the two books were removed from the bag. At the request of defense counsel, the judge gave another limiting instruction, similar to the one previously given, i.e., that the evidence was being offered not to prove that the defendant was a bad person or a possessor of pornography, but rather to corroborate the complainant's testimony, if the jury concluded that it did so.

At the conclusion of trial, the jury were provided with the pornographic videotape and a videotape player, the bag of pornographic materials, and several pornographic magazines. The jury were free to view the pornographic videotape in its entirety; no segment had been isolated from their view. At this time the judge made no explicit determination that the probative value of the materials outweighed any prejudice that they might have. In comments during the motion in limine, the judge established that counsel had seen the material and explicitly stated that some of the material would be extremely prejudicial.

The Commonwealth argued at trial, and on appeal, that the materials were admissible not only as corroboration of the complainant's testimony, but to impeach the defendant's statement to the police officer that he had no pornographic material in the home. In admitting the material, the judge limited his ruling to corroboration of the complainant's testimony.

*Discussion.* Although the defendant failed to object to the introduction of the materials at certain junctures during trial, we think he objected sufficiently to preserve the issue for appeal and we review to determine whether there was prejudicial error. See *Commonwealth* v. *Furtick,* 386 Mass. 477, 482-483 (1982); *Commonwealth* v. *Martinez,* 37 Mass. App. Ct. 948, 951 (1994). We find that having the jury review such a large quantity of pornographic material, much of which was unrelated to the alleged crime, created prejudicial error. A defendant's possession of pornography is admissible in sexual assault cases if relevant to an issue in the case and if its prejudicial effect does not outweigh its probative value. The prosecution may not introduce evidence of such material to show that a defendant previously has misbehaved, indictably or not, for the purpose of showing bad character or propensity to commit the crime charged. *Commonwealth* v. *Helfant,* 398 Mass. 214, 224 (1986). It is well-

established, however, that the rule does not render such evidence inadmissible if it is relevant for other purposes, and evidence of uncharged bad acts may be admitted to show common plan, pattern of conduct, identity, absence of accident, or motive. See *Commonwealth* v. *King*, 387 Mass. 464, 471-472 (1982); *Commonwealth* v. *Kelleher*, 42 Mass. App. Ct. 911, 912 (1997). See also Liacos, Brodin & Avery, Massachusetts Evidence § 4.4.6, at 154 (7th ed. 1999). Where evidence of other crimes, wrongs, or acts is relevant for one of these purposes, the evidence may be admitted, but only if its probative value is not substantially outweighed by any prejudice. See *Commonwealth* v. *Fordham*, 417 Mass. 10, 22 (1994).

Evidence that the defendant had shown the complainant pornographic videotapes or other pornographic material was admissible "as evidence of a pattern or course of conduct engaged in by the defendant to exploit the complainant's trust, and also as evidence of the defendant's motive or intent to engage the complainant in a sexual relationship." *Commonwealth* v. *Holloway*, 44 Mass. App. Ct. 469, 476 (1998), citing *Commonwealth* v. *Lanning*, 32 Mass. App. Ct. 279, 282-283 (1992). Testimony regarding the pornographic material was also admissible to corroborate the child's testimony. *Commonwealth* v. *Halsey*, 41 Mass. App. Ct. 200, 203-204 (1996).

Whether sexually explicit photographs or other similar materials are so inflammatory as to outweigh their probative value is a determination to be made by the trial judge in the exercise of sound discretion, *Commonwealth* v. *Hrycenko*, 31 Mass. App. Ct. 425, 431 (1991), *S.C.*, 417 Mass. 309 (1994), which will not be disturbed except for palpable error, *Commonwealth* v. *LaSota*, 29 Mass. App. Ct. 15, 24 (1990). We therefore consider whether, in the circumstances of this case, admitting a substantial quantity of pornography in evidence, permitting explicit discussion of it, and permitting the jury to view a great deal of the material, including the entirety of the videotape, during deliberations, constitutes palpable error. We hold that admission of the material in the quantity here, much of which does not appear to have been shown to the complainant, and permitting a substantial portion of those materials to be published to the jury, was an abuse of discretion and palpable error.

Our review of the record reveals a changing view of the evidence by the trial judge as the trial progressed. Defense counsel first sought to exclude the materials in a motion to suppress. After the motion was denied, he filed a motion in limine to keep the material from the jury. At the initial hearing on the motion in limine, the trial judge considered the prospective testimony of the complainant: that she had seen a videotape depicting sexual acts involving a white male, a black male and a white woman. The trial judge then ruled that, while police testimony concerning this videotape was not otherwise probative, it would "corroborate the complainant's testimony, and that's admissible," and that it would be admitted solely "as support of the complainant's testimony." The prosecutor indicated that she had no intention of playing the videotape. The court then ruled that certain magazines and the crystal cup might also be put in evidence, again to corroborate the complainant's testimony.

At this time, the judge expressly excluded other videotapes found at the defendant's home during the search. In so doing, he ruled that: "To allow those [other] tapes in would not in any way be corroborative. It may certainly buttress the Commonwealth's theory, but it leads to so much conjecture and is so fraught with prejudicial effect that the probative value is not outweighed by the prejudicial effect." There was no express ruling regarding the remaining materials later introduced.

In the course of her direct testimony, the complainant described in very general terms being shown videotapes, including description of certain acts found in the first videotape, magazines, and the crystal cup. There was no suggestion that the material was shown to her as a demonstration of acts that she was to perform, or that they were used in any other instructive way. Compare *Commonwealth* v. *Petrillo*, 50 Mass. App. Ct. 104, 105-107 (2000), cert. denied, 532 U.S. 1030 (2001) (victim testified that she was forced to watch a pornographic videotape and then emulate activity on the tape with the defendant).[5]

In *Petrillo*, we ruled that it was error to display a videotape

---

[5]The Commonwealth argues that we should distinguish *Commonwealth* v. *Petrillo*, *supra*, on the basis that the victim in that case was an adult while the

to the jury, but that given other evidence, the error was harmless. *Id.* at 108-110. The judge in that case viewed the videotape before making a determination that a short segment of sixteen minutes might be shown to the jury. *Id.* at 107. We are aware of no case in Massachusetts (and the Commonwealth has not brought any such case to our attention) involving prosecution of a defendant for the types of crimes contained in the indictments here, where the court has allowed the jury to view such a large quantity of sexual materials.

In the usual case, a general testimonial reference to the content of the sexual materials, where probative, and not depicting the defendant as particularly depraved, does not constitute an abuse of discretion, *Commonwealth* v. *Halsey*, 41 Mass. App. Ct. at 203-204, especially where the judge gives detailed limiting instructions confining the jury's consideration of the evidence. Here, however, a great quantity of material, much of which had no direct bearing on the complainant's testimony, was given to the jury for perusal in the jury room. We think that the limiting instruction here, in the face of the large quantity of material directly shown the jury, was incapable of overcoming the material's prejudicial effect. Moreover, there is no indication on the record that much of the material (other than the scene described on the one videotape, the crystal cup, and the magazines described by the complainant) bore any probative weight toward corroborating the complainant's testimony. There is no evidence that the judge, at the time he ruled on the admissibility of the bulk of the material, conducted the analysis necessary to determine whether the probative value exceeded the risk of inflaming the jury, especially after his having initially described some of the material as "so fraught with prejudicial effect that the probative value is outweighed by the prejudicial effect." As in *Commonwealth* v. *Petrillo, supra* at 109, "[t]he graphic display . . . added little to the [complainant's] direct testimony of her sexual relations with the defendant and could only inflame the jury against the defendant as a generally lewd person." See also *Commonwealth* v. *LaSota*, 29 Mass. App. Ct. 15, 26-27 (1990). The record demonstrates that the defendant

complainant here is a child. We think such a distinction unavailing; if anything, the materials here might well be more prejudicial given the complainant's age.

has met his burden of showing that much of the material should not have been introduced in evidence, and that the materials in question should not have been published to the jury. See *Commonwealth* v. *Horton*, 376 Mass. 380, 398 (1978), cert. denied sub nom. *Wideman* v. *Massachusetts*, 440 U.S. 923 (1979). We cannot say "with fair assurance . . . that the judgment was not substantially swayed by the error," and we conclude that the error was thus prejudicial. *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983), quoting from *Kotteakos* v. *United States*, 328 U.S. 750, 765 (1946). See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

With respect to the defendant's remaining claims of error, we do not reach them, given the foregoing, except to note that the defendant suggests that even if they do not require reversal when taken in isolation, when considered in combination with the extreme prejudice that flowed from the use of the pornographic materials, the cumulative effect surely "fatally infected the judgment of conviction." *Commonwealth* v. *Mazzone*, 55 Mass. App. Ct. 345, 353 (2002), quoting from *Commonwealth* v. *Mills*, 47 Mass. App. Ct. 500, 507 (1999). We conclude that taken in isolation, reference by acronym to a "SAIN"[6] interview conducted by a "forensically trained child interviewer" did not amount to prosecutorial vouching, and testimony that a second report of abuse to the Department of Social Services was "supported" was not error.

*Judgments reversed.*

*Verdicts set aside.*

---

[6]"SAIN" stands for Sexual Abuse Intervention Network. See *Commonwealth* v. *Howell*, 57 Mass. App. Ct. 716, 718 & n.2 (2003).