NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

12-P-1659                                        Appeals Court


COMMONWEALTH  vs.  GLENN CHRISTIE.


No. 12-P-1659.

Essex.      January 11, 2016. - July 5, 2016.

Present:  Grainger, Rubin, & Milkey, JJ.


Rape.  Indecent Assault and Battery.  Obscenity, Dissemination
    of matter harmful to minor.  Evidence, Videotape, Relevancy
    and materiality.



Indictments found and returned in the Superior Court
Department on June 15, 2007.

The cases were tried before David A. Lowy, J., and a motion
for new trial, filed on July 2, 2013, was heard by him.


Alexei Tymoczko for the defendant.
Kenneth E. Steinfield, Assistant District Attorney, for the
Commonwealth.


RUBIN, J.  The defendant appeals from his convictions on

four counts of statutory rape, G. L. c. 265, § 23, one count of

indecent assault and battery on a child under the age of

fourteen, G. L. c. 265, § 13B, and one count of dissemination to

a minor of matter harmful to minors, G. L. c. 272, § 28.  The

Commonwealth concedes that there was no evidence to support one of the statutory rape convictions, which therefore must be reversed and the indictment dismissed. In addition, because evidence of possession of videotape depictions of adult men engaged in same-sex sex was improperly admitted to demonstrate the defendant's sexual interest in the alleged victim, a twelve year old boy, the convictions on the other counts, except the dissemination count, also must be reversed.[1]

Background. The alleged victim, whom we shall call Daniel, testified that in the summer of 2005, when he was twelve years old and he and his mother were living with the defendant, the defendant twice performed oral sex on him. He testified further that he briefly complied with the defendant's request that he penetrate the defendant anally. He also testified that the defendant went into a "porn store" while Daniel waited in the car, and purchased a "sex toy," described at trial as a "fake penis," and two digital video discs (DVDs). On returning home, the defendant played one of the DVDs, showing "[a] male and a female having sexual intercourse" on a DVD player in the living room. The defendant also inserted the sex toy into Daniel's

---

[1] The parties and thus the judge employed the term "homosexual" throughout the trial. We therefore utilize that terminology at some points in our opinion, but acknowledge that the term, while clinically and semantically correct, is often considered indicative of disapprobation in contrast to the use by gay individuals of the preferred terms "gay" or "same-sex."

anus, stopping when Daniel said he was "uncomfortable." Daniel also testified that he later saw "two men having sexual intercourse" on the other DVD.

Two of the convictions of statutory rape were based on the incidents in which the defendant allegedly performed oral sex on Daniel, and one was based on the alleged incident involving the sex toy. As the Commonwealth concedes, there is no evidence to support the fourth rape conviction. The defendant was also convicted of one count of indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B, based on the alleged incident in which Daniel had anal sex with the defendant. Finally, the defendant was convicted of one count of dissemination to a minor of matter harmful to minors, G. L. c. 272, § 28. There were two possible bases for the dissemination charge, the alleged playing of each DVD described supra.

In 2005, Daniel disclosed to his mother and the police a single alleged act of the defendant performing oral sex on him, and on that basis the defendant was charged with one count of statutory rape. On the eve of trial, in 2007, Daniel disclosed to the district attorney and the police all the other alleged sex acts. Police obtained a search warrant for the defendant's residence, a new one to which he had moved in the interim. The

defendant was subsequently indicted on the charges of which he was convicted.

The defendant is openly gay. Among the items seized pursuant to the warrant were eight video home system (VHS) videotapes from the defendant's bedroom, four containing heterosexual pornography and four containing same-sex male pornography, and five VHS videotapes from a storage area in the basement, three of which were not pornographic, one of which contained heterosexual pornography and one of which contained same-sex male pornography.

The judge concluded correctly that evidence of a man's homosexuality is irrelevant to whether he has a sexual interest in children. See Commonwealth v. Baran, 74 Mass. App. Ct. 256, 284 (2009). But in part in reliance on our decision in Commonwealth v. Wallace, 70 Mass. App. Ct. 757 (2007), he concluded that the same-sex pornography was relevant to the defendant's sexual interest in Daniel and to the manner and means by which the charged rapes and sexual assault were allegedly committed, that the risk of unfair prejudice from this evidence did not substantially outweigh its probative value,[2] and

---

[2] The judge did not have the benefit of the Supreme Judicial Court's purported retroactive "clarif[ication]" in Commonwealth v. Crayton, 470 Mass. 228, 249 n.27 (2014), decided during the pendency of this appeal, that a defendant's burden in seeking to exclude evidence due to unfair prejudice is lighter than that

that with a proper limiting instruction the videotapes could be admitted in evidence. The judge excluded the heterosexual pornography.

The judge recognized that even with a limiting instruction there was a residual risk of prejudice and, in order to reduce that prejudice, he suggested that testimony describing the acts depicted in the videotapes rather than the videotapes themselves be entered in evidence, on condition that the defendant waive any argument under the best evidence rule. The parties agreed to this procedure, with the defendant preserving his objection to the admission of the evidence.

These videotapes were not the subject of the dissemination charge; the parties agree that none of these videotapes was shown to Daniel, as they are not in the same DVD format as the video allegedly seen by him. The parties also agree that the

---

court previously asserted. In Crayton, the Supreme Judicial Court held that "evidence is inadmissible where its probative value is outweighed by the risk of unfair prejudice to the defendant, even if not substantially outweighed by that risk." Given the Supreme Judicial Court's previous use of the test asking whether the risk of unfair prejudice "substantially" outweighs its probative value, the judge's use at the time of trial of that test, rather than what the Supreme Judicial Court has now articulated as the proper one, was not only understandable but appropriate. Had the judge had the benefit of the Supreme Judicial Court's decision in Crayton he may, of course, have concluded that the challenged evidence was not admissible.

videotapes contain only images of adults who do not appear to be underage and that their possession is lawful.

At trial, one of the officers who executed the warrant testified that the first videotape depicted "[a]dult males engaged in oral and anal intercourse," the second depicted "[a]dult males engaged in forms of masturbation," the third depicted "adult males engaged in oral, anal sex and masturbation."[3]  The fourth videotape depicted "adult males engaging in masturbation, oral sex and anal sex," and a fifth videotape, found in the cellar, depicted "adult males engaging in oral and anal sexual intercourse," as well as "adult males using a sex toy that was shaped like a penis."

The judge instructed the jury as follows:

"You may consider this evidence solely as it relates to the Defendant's sexual interest and state of mind in 2005 as it relates to [Daniel] and as it relates to the manner and means by which the Defendant allegedly accomplished the alleged sexual assault.  Therefore, in order to consider such evidence you would need to find that the Defendant possessed these tapes in 2005.

"This evidence is not admitted on indictment 006 charging dissemination of harmful materials to a minor.

". . .

"You may not use this evidence that the Defendant possessed tapes of males engaged in sexual conduct as evidence that the Defendant was more likely to have

---

[3]  She initially testified that the third tape also included "sexual acts involving an adult sex toy also known as a fake penis," but later clarified that she was mistaken about this.

> committed the crimes charged or that he has a so-called bad character or criminal personality. The Defendant is not on trial based on the trait of character or personality but for the crimes charged in the indictment. Once again you may consider this evidence however as it relates to the Defendant's sexual interest and state of mind in 2005 as it relates to [Daniel] and as it relates to the manner and means by which the Defendant allegedly accomplished the alleged sexual assaults."

He repeated this instruction as part of the jury charge.

In closing argument, the prosecutor highlighted the defendant's possession of the videotapes in arguing that the jury should convict the defendant. Specifically, the prosecutor stated: "Now, the VHS tapes, what do they depict, what's the significance of them? Well, Ladies and Gentlemen, they depict the same acts that [Daniel] described about what happens to him. Oral sex, anal sex, masturbation and finally the use of a fake penis. That's why it's significant."

Discussion. We review the judge's discretionary determinations about the relevance of the videotapes and the balance of the probative value of the evidence against the risk of unfair prejudice for palpable error. Commonwealth v. Simpson, 434 Mass. 570, 578-579 (2001). We review the jury instruction for prejudicial error. See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).

1. The descriptions of adult men engaging in sex. As relevant to the case before us, the four videotapes seized from the defendant's bedroom contained images of adult men engaged in

oral and anal sex.[4]  We turn first to the admission of the descriptions of these sex acts in the videotapes seized from the bedroom, leaving the discussion of the videotape found in the basement for later.

a.  Propensity.  The defendant argues that this was improperly admitted propensity evidence.  Though the distinction is a fine one, these descriptions were not introduced as impermissible propensity evidence.  Propensity evidence, the admission of which is barred, is evidence of a person's character through reputation or past conduct introduced to demonstrate that he or she acted in conformity with that character in the instant case.  See Commonwealth v. Crayton, 470 Mass. 228, 249 (2014).  The judge specifically and properly instructed the jury that the challenged evidence could not be used to demonstrate the defendant's propensity to engage in such conduct in order to prove that he committed the charged act in this case.

b.  Sexual interest in Daniel.  Evidence of past conduct may be introduced for purposes other than proving that the

_____

[4] Three of the videotapes seized from the bedroom contained such images.  The fourth contained only images of men masturbating.  The Commonwealth, however, makes no argument defending the admission of descriptions of masturbation.  A fifth videotape, found in the basement, included images of the use of a sex toy described at trial as a "fake penis."  That videotape and those images are discussed separately, see part 2, infra.

defendant acted in conformity with a propensity. See ibid.
Here the jury were instructed that they could use the videotapes
as evidence of "sexual interest and state of mind . . . as it
relates to [Daniel] and as it relates to the manner and means by
which the Defendant allegedly accomplished the alleged sexual
assault."

We have held evidence that a defendant possessed
pornography admissible to prove a sexual interest in a child
victim where some feature of the pornography or the
circumstances in which it was found was specifically probative
of that interest. In Wallace, 70 Mass. App. Ct. at 758, for
instance, the defendant was accused of groping the breast of a
twelve year old girl. When the police searched his car, they
found photographs of young girls and adult pornography stored
together in the defendant's glove compartment and other
photographs of young girls, adult pornography, and "two small
pairs of girls' or women's panties and bras" stored together in
the defendant's trunk.[5] Id. at 759. We held that all of this
evidence, including the adult pornography, was admissible
together to show a sexual interest in young females, and to

---

[5] The police also found KY lubricating jelly in the glove
compartment, and more KY jelly, condoms, clothesline, duct tape,
and a ten-inch steak knife in the trunk. The court considered
the admissibility of the photographs, pornography, and underwear
without reference to these other items. See Wallace, 70 Mass.
App. Ct. at 759, 765.

rebut the defense that any contact between the defendant's hand and the victim's breast was accidental.  Id. at 765.  As the Supreme Judicial Court later explained, "where [the] defendant alleged that [the] touching of [the] child victim's breast was accidental, [the] presence of photographs of fully clothed young girls, photographs of nude adult men and women, pornographic magazines containing pictures of teenage girls and small-sized underwear in his automobile was relevant to and probative of whether [the] touching was intentional."  Commonwealth v. Carey, 463 Mass. 378, 389 (2012) (describing our holding in Wallace).

As the judge in this case recognized, however, and as this court has held, evidence of an adult's homosexuality is irrelevant to sexual interest in children.  See Baran, 74 Mass. App. Ct. at 284 (gay defendant's sexual orientation was irrelevant to charges of child rape and indecent assault and battery on person under age of fourteen).[6]  In support of a motion in limine seeking to question jurors during voir dire

---

[6] As Justice Fecteau observed when he allowed the new trial motion in Baran while sitting in the Superior Court, "While not the subject of extensive discussion in the appellate cases of the Commonwealth, . . . this subject has received attention in other jurisdictions:  'Because of its prejudicial character, evidence of homosexuality may be properly introduced only if it is relevant to the charged crime. [citations omitted.]  In this case, the evidence was improperly introduced because homosexuality is not relevant to the crime charged.  The belief that homosexuals are attracted to prepubescent children is a baseless stereotype.'  State v. Bates, 507 N.W.2d 847, 852 (Minn. App. 1993)."

about whether they held a misconception equating male homosexuality with pedophilia or child molestation, the defendant put before the judge two sources demonstrating that it is well settled within the scientific community that homosexuality is not correlated with pedophilia or child molestation.[7]  Although the judge ultimately denied that motion on other grounds, while addressing it he explicitly found that gay men are "not more likely" than heterosexual men to engage in sexual acts with children.

The judge thus acknowledged what the Baran court concluded, that the myth that homosexual men have an interest in sex with underage children has been discredited.  See id. at 287 (noting that homosexuality was previously routinely and improperly "linked with . . . child molestation . . . and pedophilia").  The use of evidence of an adult's homosexuality to demonstrate a sexual interest in underage boys (or, indeed, underage children of either gender) is thus impermissible.  Given this, we agree with the defendant that evidence of his interest in viewing depictions of adult males engaged in generic acts of same-sex sex, absent any additional factors like the ones present in

---

[7] The sources put before the judge were Jenny, Roesler, and Poyer, Are Children at Risk for Sexual Abuse by Homosexuals?, 94 Pediatrics 41 (1994), and Herek, Facts About Homosexuality and Child Molestation, available at: http://psc.dss.ucdavis.edu/rainbow/html/facts_molestation.html [https://perma.cc/26HN-9FQE].

Wallace, is irrelevant to whether he has an interest in sexual contact with an underage boy.[8]

The impropriety of admitting this evidence to show the defendant's state of mind and sexual interest with respect to boys becomes clear if one imagines that the evidence was about adult heterosexual pornography and the victim were a girl. No court properly could find a defendant's mere possession of adult heterosexual pornography relevant to proving his sexual interest in a female child. Compare Wallace, 70 Mass. App. Ct. at 765 (adult heterosexual pornography relevant to proving sexual interest in female child when it was stored and admitted along with pictures of young girls and small girls' or women's underwear). "It is no more reasonable to assume that a preference for same gender adult sexual partners establishes a proclivity for sexual gratification with same gender children than it is to assume that preference for opposite gender adult sexual partners establishes a proclivity for sexual

---

[8] Accord People v. Garcia, 229 Cal. App. 4th 302, 313-314 (2014) ("Trying to draw a connection between a child molester's sexual orientation and a preference for children of one gender or the other is problematic to the point of counterproductivity. '[M]any child molesters cannot be meaningfully described as homosexuals, heterosexuals, or bisexuals [in the usual sense of those terms] because they are not really capable of a relationship with an adult man or woman. Instead of gender, their sexual attractions are based primarily on age'" [citation omitted]).

gratification with opposite gender children." State v. Ellis, 820 S.W.2d 699, 702 (Mo. Ct. App. 1991).

To the extent the Commonwealth reads our decision in Wallace, on which the judge understandably relied, to support the admission of this evidence, it reads it too broadly. In Wallace, adult pornography was found together with pictures of children and child-sized underwear and was found to have probative value. Here, only adult pornography was found. The admission of the descriptions of these videotapes for the purpose of showing interest in sex with an underage boy was thus error, as was the instruction permitting the jury to use the evidence for this purpose.

The ingrained stereotypes and mistaken views still held by some individuals render evidence such as that introduced here unfairly prejudicial. See, e.g., United States v. Delgado-Marrero, 744 F.3d 167, 205 (1st Cir. 2014) ("[E]vidence of homosexuality has the potential to unfairly prejudice a defendant"). Even though there was other evidence that the defendant here, who never disputed his sexual orientation, was gay, and that he owned pornography, the error in the admission of the explicit descriptions of his interest in same-sex sex, exacerbated by the instruction on its permissible use, was prejudicial. See Crayton, 470 Mass. at 249 n.27.

This error with respect to intent and state of mind requires reversal on all counts except that for dissemination, with respect to which the jury were expressly informed they could not use this evidence.[9]  Because there may be a retrial, though, we turn to the other purposes for which the jury were instructed they were permitted to use this evidence.

c.  Manner and means.  The jury were instructed that they could also use the evidence of the contents of these videotapes "as it relates to the manner and means by which the Defendant allegedly accomplished the alleged sexual assaults."  The Commonwealth asserts that it is reasonable to conclude that the acts depicted here were "unique enough" to show the defendant had an interest in engaging in those acts, whether with an adult or a child.  Indeed, this was the way the Commonwealth encouraged the jury to use the evidence at trial.

The Commonwealth concedes, however, that what is depicted in the videotapes found in the bedroom (which again does not include the use of a sex toy) are "generic" acts, the ordinary means of men having same-sex sex.  It follows from our holding above that, standing alone, an interest in viewing lawfully possessed depictions of adult men having gay sex is not relevant to the question whether a male adult has an interest in engaging

---

[9] We therefore need not and do not reach the defendant's constitutional claims.

in sex acts of that kind with underage boys, just as, standing alone, an interest in viewing lawfully possessed depictions of adults engaged in heterosexual sex cannot support a conclusion that a male adult has an interest in engaging in sex acts of the same kind with underage girls.  On any retrial, then, this evidence may not be admitted for the former purpose.

Finally, although the admission of this evidence is not defended by the Commonwealth on this ground, we think the jury might have understood the instruction to mean that the jury were allowed to use this evidence in determining whether pornography was used by the defendant to "groom" Daniel to submit to his advances.[10]  As described supra, it was alleged that the defendant showed Daniel pornography (albeit both heterosexual and male homosexual) as a means of getting him to participate in these crimes, by preparing him to submit to the defendant's advances.  As experts have testified, "pedophiles often use various forms of pornography as a way to initiate children into sexual activity."  Commonwealth v. Halsey, 41 Mass. App. Ct.

---

[10] We recognize that courts have not settled on any single definition of the term "grooming," and that it has been used in various ways.  As used here, we intend "grooming" to "refer[] to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity."  United States v. Chambers, 642 F.3d 588, 593 (7th Cir. 2011).

200, 201 (1996).  And we have held that adult pornography possessed by a defendant is sometimes admissible in cases involving child sexual abuse to corroborate the child victim's testimony that he was shown pornography.  Id. at 203-204.

It is undisputed, however, that these videotapes were not shown to Daniel.  Therefore, they are relevant to a claim of grooming only to the extent that they corroborate Daniel's allegations that he was shown other pornography.  Any such corroborating value of the defendant's possession of these videotapes of generic acts of adult same-sex sex -- at a different residence, two years after the crimes are alleged to have been committed -- is too attenuated to overcome the risk of undue prejudice from this evidence.  These depictions thus may not be admitted for such a corroborative purpose under the applicable standard.  Notably, the judge -- whose instruction did not specify that the evidence could be used to corroborate the allegation of grooming -- agreed with this assessment, explicitly barring the jury from considering the defendant's possession of the videotapes in their deliberations on the dissemination charge.

2.  The description of the use of the sex toy.  The final videotape contained not only depictions of oral and anal sex -- to which our analysis, supra, applies -- but a depiction of the use of a sex toy shaped like a penis.  As described supra, one

of the counts of statutory rape involves an allegation of the use of such a device in a similar manner on Daniel.

The Commonwealth has not put any evidence in the record before us to show that use of a sex toy is a sufficiently distinctive sexual act that it could be admitted to show the defendant's specific interest in this practice (if accompanied by appropriate instructions).  There is nothing in the record to support a conclusion that this conduct is so unusual that the probative value of evidence that the defendant possessed a visual depiction of it is more probative of his interest in engaging in it than unfairly prejudicial.  Cf. Carey, 463 Mass. at 387-392 (photographs and video "depicting women in various states of undress being strangled, ostensibly to death" found on defendant's computer "were sufficiently similar to the way in which the defendant assaulted the victim to be relevant to and probative of his sexual desire").  Nor is there evidence that interest in the use of such a sex toy with an adult would be probative of an individual's interest in using one with an underage child with whom he was unlawfully having sex.  Should the Commonwealth seek to introduce the evidence of the defendant's possession of these visual depictions of the use of a sex toy at retrial as pertinent either to interest in that particular type of sex act or to the precise manner of commission of the third count of statutory rape, it will be

required to demonstrate those things to the judge in the first instance.[11],[12]

3. The fourth conviction of statutory rape. Finally, the Commonwealth concedes that there was evidence of only two acts of the defendant performing oral sex on Daniel, notwithstanding the prosecutor asserting in closing that there was "another occasion in [his] bedroom" when the defendant did so. As the Commonwealth further concedes, one of the convictions of statutory rape therefore must be reversed and the indictment dismissed.

---

[11] Because the defendant is not alleged to have shown Daniel pornography containing depictions of the use of such a sex toy, this videotape is no more corroborative of Daniel's story about being shown pornography than the videotapes addressed supra.

[12] The defendant alleges that the evidence in the affidavit relied on by the assistant clerk-magistrate in issuing the search warrant allowing a search of the defendant's home for "any DVDs or videotapes containing pornographic material, whether heterosexual or homosexual in nature" was stale since almost twenty-one months had passed since, according to Daniel, the defendant had shown him pornography, and the defendant had moved in the interim.

The affidavit, however, included statements by the defendant from 2005 that he "stored" pornography at his home and that he owned (rather than, for example, rented) ten pornographic "VCR tapes" and had purchased a pornographic DVD. There was also a statement from the affiant police officer, an investigator of child abuse and sexual assaults since 1989, that pornography "might reasonably remain in the possession of a pedophile for many years." The evidence on which the assistant clerk-magistrate relied therefore was not stale for probable cause purposes. The description of the evidence to be seized was also sufficiently particular to meet constitutional requirements.

Conclusion.  Although we express no opinion on the defendant's guilt or innocence of the very serious charges against him, for the reasons described supra, the defendant's convictions on one of statutory rape charges must be reversed, the verdict set aside, and the indictment thereon dismissed, and the defendant's convictions on the remaining statutory rape charges and the indecent assault and battery on a child under the age of fourteen charge must be reversed, and the verdicts set aside.  The conviction on the dissemination charge is affirmed.[13]

So ordered.

---

[13] For the reasons given by the judge, we find no merit to the defendant's claim contained in his motion for a new trial of ineffective assistance of counsel.